JOHN V. FARWELL

*v.*

BESSIE McLEOD STURGES *et al.*

*Filed at Ottawa November 9, 1896—Rehearing denied March 6, 1897.*

1. MOTIONS—*what questions cannot be tried on motion for leave to file additional record.* The question whether or not a written agreement, duly entered of record in the trial court, purporting to be executed by all the parties, was in fact so executed, cannot be tried in the Supreme Court on affidavits, under a motion for leave to file a copy of such agreement as additional record.

2. JURISDICTION—*when party is estopped to deny jurisdiction.* Though the agreement of submission of disputed matters provided for by section 1 of the act to avoid delay in the administration of justice (Laws of 1887, p. 158,) may have been executed by the counsel for one of the parties without authority, yet if such party appears and acts thereunder and induces the court and the parties to rely upon it he is estopped to deny its binding force as conferring jurisdiction.

3. COURTS—*submission of matters to circuit judges for decision is not an arbitration.* The proceeding provided for in the act to enable parties to avoid delay in the administration of justice is not an arbitration, but is a proceeding in a court of general jurisdiction, either at law or in chancery, according to the nature of the case.

4. APPEALS AND ERRORS —*when release of errors need not be pleaded in bar in an appellate court.* Where a release of errors, as embodied in the contract of submission, appears in the record, and the trial court had jurisdiction to enter the judgment, it is not necessary to plead such release either on appeal or writ of error.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

This is a writ of error sued out by John V. Farwell, against Bessie McLeod Sturges, James H. Wilkerson, administrator of the estate of William Sturges, deceased, and the other defendants in error, to reverse a decree entered by the circuit court of Cook county on the 21st day of June, 1894, at the June term of said court, in a proceeding in said court heard and determined by the Hon. Murray F. Tuley, one of the judges thereof, under and by virtue of an act entitled "An act to enable parties to avoid delay in the administration of justice," in force

July 1, 1887. As the matters in controversy were, under the act in question, submitted orally and without formal pleadings, and as there is no certificate of evidence or bill of exceptions, such matters, so far as necessary to be stated, are shown principally by the decree.

The cause in the circuit court was entitled as follows: "In the circuit court of Cook county, State of Illinois.— In the matters in controversy between William Sturges and Bessie McLeod Sturges, separately, of the one part, and John V. Farwell, Charles B. Farwell, Abner Taylor and the Capitol Freehold Land and Investment Company, (Limited,) of London, England, all or either of them, separately or jointly, of the other part." And the decree then recites:

"This cause coming on to be heard upon the agreements of submission herein, which are as follows:

"In the circuit court of Cook county, State of Illinois. —In the matter of difference between William Sturges, or Bessie McLeod Sturges, of the one part, and John V. Farwell, Charles B. Farwell, Abner Taylor and the Capitol Freehold Land and Investment Company, (Limited,) of London, England, all or either of them, separately or jointly, of the other part.

"Submission of controversy to the Hon. M. F. Tuley, as judge of the said court, as provided by statute, and in pursuance of stipulation following:

"*Stipulation of submission.—In the circuit court of Cook county, State of Illinois.*

"*First*—We, John V. Farwell, Charles B. Farwell, Abner Taylor and the Capitol Freehold Land and Investment Company, (Limited,) of the one part, and William Sturges of the other part, do hereby mutually, jointly and severally agree to submit to Judge Murray F. Tuley, of said court, certain matters in controversy between us for his determination, without a jury, he to hear the same within such reasonable time as may be proper for such

hearing, and to enter the judgment or decree of the court therein within a reasonable time after such hearing shall be concluded; that the matters submitted herein shall include all matters of difference whatsoever between the parties of the one part, or either of them, and the parties of the other part, or either of them, excepting only the matters at issue between Bessie McLeod Sturges and the said John Farwell in a certain cause pending in the United States Circuit Court for the Northern District of Illinois. All other suits or proceedings, of every name and nature, between the parties of the one part, or either of them, shall be dismissed, discontinued and withdrawn, without prejudice to the rights of any party hereto.

"*Second*—That said judgment or decree shall contain a statement as to what matters in controversy were so submitted, and such statement thereof shall be conclusive.

"*Third*—That no record, except of this agreement and of such judgment or decree, shall be made as to the matters in controversy so submitted, or as to the proceedings had on the hearing thereof.

"*Fourth*—That such judgment or decree may be enforced in like manner as other judgments and decrees of such court.

"*Fifth*—That we, each to the others, hereby waive all right of appeal from such judgment or decree, and release all errors that may intervene in the hearing of the matter so submitted and in the entering up of the judgment or decree therein, and agree that this release of errors may be plead in bar of any writ of error that may be issued out as to such judgment or decree.

"Witness our hands and seals this 23d day of May, 1892.

JOHN V. FARWELL,            [Seal.]<br>
CHARLES B. FARWELL,         [Seal.]<br>
ABNER TAYLOR,               [Seal.]<br>
THE CAPITOL FREEHOLD LAND<br>
  AND INVESTMENT COMPANY. [Seal.]<br>
WILLIAM STURGES.            [Seal.]

"Stipulation between Bessie McLeod Sturges and John V. Farwell, whereby the matters involved in the suit in Marquette county, Michigan, as shown in the pleadings hereinbefore set out, are submitted for adjudication in this proceeding.

"It is stipulated between John V. Farwell, by his solicitor, George F. Westover, of the one part, and Bessie McLeod Sturges, joined with William Sturges, of the other part, as follows:

"Whereas, on the ...... day .........., 1891, the said Bessie McLeod Sturges filed her bill of complaint against John V. Farwell, Richard P. Travers and William Sturges in the circuit court for Marquette county, in the State of Michigan, wherein the said Bessie McLeod Sturges claimed a certain interest or equity of redemption in certain lots or real estate situated in the said county of Marquette and State of Michigan; and whereas, in the year 1892 the said John V. Farwell, together with Charles B. Farwell, Abner Taylor and the Capitol Freehold Land and Investment Company, (Limited,) of the one part, entered into an agreement in writing with the said William Sturges, whereby, as provided by the statutes of the State of Illinois, the said parties agreed to submit to Murray F. Tuley, a judge of the circuit court of Cook county, in the State of Illinois, all matters of difference between the said William Sturges and the said John V. Farwell and others, and each of them, said matters to be heard by the said Judge Murray F. Tuley without a jury; and whereas, in consideration of the agreements herein contained, the said Bessie McLeod Sturges is to dismiss her said bill of complaint filed in the circuit court of Marquette county, in State of Michigan, as aforesaid:

"Now, therefore, it is hereby agreed that the said Bessie McLeod Sturges shall dismiss the said cause pending in the said circuit court of Marquette county, as aforesaid, and that all the matters in controversy therein, and all the other matters in controversy, if any, between the

said Bessie McLeod Sturges and said John V. Farwell, or between said Bessie McLeod Sturges and either of the other parties to the said agreement of submission to the said judge of the circuit court of Cook county, as aforesaid, shall be and hereby are included within the said submission, and shall be and hereby are submitted to the said Murray F. Tuley, to be heard and adjudged by him at the same time and under the same conditions, specifications and stipulations as he shall hear and adjudge the matters to be submitted to him by the stipulations of the said William Sturges and the said John V. Farwell and others already entered into as aforesaid.

*September, 1893.*           BESSIE MCLEOD STURGES,
                            JOHN V. FARWELL,
                                  By GEORGE WESTOVER, *his attorney."*

"And the said parties to the said agreements of submission and to the cause being present, with their respective solicitors and attorneys, and the court having obtained full jurisdiction of said parties and of the matters in controversy between them, and having heard the evidence, both oral and written, produced and offered by said parties, respectively, and having heard the arguments of the respective counsel and attorneys, and being fully advised in the premises, doth find, determine and adjudge and decree as follows:

"That the matters in controversy between said parties, and so submitted by the said parties to the said two agreements of submission for the final determination and adjudication of this court, are found, adjudged and decreed to be as follows:

"*First*—As to the respective right, title and interest of the said William Sturges and the said John V. Farwell, Charles B. Farwell and Abner Taylor, hereinafter referred to as the 'Syndicate,' in and to a certain contract made between the said persons composing said syndicate and Kensington & Co. bearing date the 13th day of July, 1885, which said contract is as follows:

*"The Kensington Contract, between Kensington & Co. and John
V. Farwell, C. B. Farwell and Abner Taylor, July 13, 1885.*

"Memorandum of agreement, made on the 13th day of
July, 1885, between John Villiers Farwell, of Chicago, in
the United States of America, but now temporarily re-
siding at No. 49 Dover street, Picadilly, in the county of
Middlesex, merchant; Charles Benjamin Farwell, of Chi-
cago aforesaid, merchant, and Abner Taylor, also of Chi-
cago aforesaid, merchant, of the one part, and Kensington
& Co. of No. 1 George street, Mansion House, in the city
of London, advertising contractors, of the other part:

"Whereas, by an agreement made on or about the 1st
day of June, 1885, between the said Abner Taylor of the
first part, John Villiers Farwell and Charles Benjamin
Farwell of the second part, and William Chase Prescott,
as manager for and trustee on behalf of the Capitol Free-
hold Land and Investment Company, (Limited), of the
third part, the said Abner Taylor sold, and the company
purchased, certain lands situate in the Pan Handle of
Texas, therein particularly described, at the price therein
mentioned; and whereas, by an agreement bearing even
date herewith and made after the making hereof, between
the company of the one part and the said Kensington &
Co. of the other part, the company agrees with the said
Kensington & Co. that the said Kensington & Co. shall
issue debentures upon the terms set forth in said agree-
ments; and whereas, John Villiers Farwell, Charles Ben-
jamin Farwell and Abner Taylor, for good and sufficient
reasons, are desirous that the said subscription for de-
bentures shall be made as quickly as possible, and have
agreed with the said Kensington & Co. that in considera-
tion of their entering into the agreements hereinbefore
last recited they will allot, or cause to be allotted, or
transfer, or cause to be transferred, to the said Kensing-
ton & Co., or their nominees, fully paid-up shares in the
company, in manner hereinafter provided: Now it is
hereby agreed as follows:

165—17

"1. After setting aside or allotting 13,000 fully paid-up shares, in pursuance of the terms of the agreement of the first of June, 1885, in respect to £200,000 worth of debentures subscribed for in America and £60,000 worth of debentures to be subscribed for in England. Before the prospectus inviting subscriptions for debentures is issued, the parties hereto of the first part shall set aside 37,000 fully paid-up shares, to be disposed of as follows: 3500 of such shares are to be allotted *pro rata* as bonuses to the applicants for the first £140,000 worth of debentures subscribed for, and 3500 *pro rata* to the said Kensington & Co., as they may direct, and when the said debentures are subscribed for.

"2. If, within six months from the date of the issue of the first debenture prospectus, the said John Villiers Farwell, Charles Benjamin Farwell and Abner Taylor shall be of opinion that the subscription for debentures are not being made sufficiently rapid to meet the needs of the company, they shall notify such opinion to said Kensington & Co., and shall thereupon be at liberty to themselves take such measures auxiliary to those of the said Kensington & Co. as they may think fit, until £400,000 worth of debentures shall have been subscribed for, but in respect to the debentures subscribed for wholly in consequence of such auxiliary measures no shares shall be allotted to the said Kensington & Co. under this agreement.

"3. The residue of the said shares shall be allotted to the said Kensington & Co., or as they may direct, in the proportion of one £10 share fully paid up for every £20 of nominal value subscribed for in the debentures, as and when the same shall be subscribed for.

"4. If the £260,000 referred to in paragraph 1, or any part thereof, is not raised in manner hereinbefore referred to, the same, or such part thereof as shall not have been so raised, shall form part of the debentures, the subscriptions for which are to be obtained by the said Kensington & Co., and the bonuses of fully paid shares payable in

respect thereof, in accordance with the terms of the here-inbefore recited agreement of the first of June, 1885, shall be paid to the said Kensington & Co. or as they may direct, but the parties hereto of the first part shall be at liberty to obtain subscriptions for the same: *Provided al-ways*, that if any subscriptions shall be obtained in Europe otherwise than through the said Kensington & Co., they shall, nevertheless, be entitled to receive the shares they would otherwise be entitled to under this agreement as if they had obtained the said subscriptions themselves.

"5. The said Charles Benjamin Farwell, John Villiers Farwell and Abner Taylor undertake and agree, that if, in pursuance of sub-section 2 of article 2 of the herein-before recited agreement of the first of June, 1885, they shall demand and receive from the company the whole or any part of the £600,000 debentures, that they will not sell or cause the same to be sold in Europe except through the said Kensington & Co. and under the terms of this agreement: *Provided, however*, that the said Charles Ben-jamin Farwell, John Villiers Farwell and Abner Taylor may transfer not exceeding £25,000 thereof in payment for stores, machinery or materials supplied to them by any firm, company or person in Europe. And it is hereby further agreed, by and between the said parties hereto, that whereas, the said Kensington & Co. are entitled to receive from the company two per cent upon the nominal amount of debentures subscribed for, in pursuance of the agreement bearing even date herewith and hereinbefore referred to, the said Kensington & Co. shall return to the said Charles Benjamin Farwell, John Villiers Farwell and Abner Taylor shares to which they, the said Ken-sington & Co., shall be entitled to under this agreement, to a number equal in nominal amount to the sum received by the said Kensington & Co. from the company, as and when they shall receive the same; but this condition shall not apply to the two per cent paid to the said Ken-sington & Co. in respect of any debentures subscribed for

solely through the parties hereto of the first part, in pursuance of articles 2 and 4 thereof.

"7. In the event of any of the applicants for the debentures in the company desiring to receive interest upon the amount advanced by them at the rate of seven per centum per annum in lieu of five per centum with a bonus in fully paid shares, then the said Kensington & Co. shall not be entitled to receive any portion of the said bonus which would have been paid to such applicants, but the same shall belong to the said John Villiers Farwell, Charles Benjamin Farwell and Abner Taylor, but Kensington & Co. shall be entitled to receive the amount of shares payable to them in pursuance of this agreement as if the bonus had been paid to the applicants.

"As witness the hands and seals of said parties.

| | |
|---|---|
| JOHN V. FARWELL, | [Seal.] |
| CHARLES B. FARWELL, | [Seal.] |
| By JOHN V. FARWELL, *his attorney in fact.* | |
| ABNER TAYLOR. | [Seal.] |
| By JOHN V. FARWELL, *his attorney.* | |

"Signed, sealed and delivered by the within named John V. Farwell, Charles B. Farwell and Abner Taylor, in the presence of Traves T. Briant, clerk to Snell, Son & Greenip, solrs., 1 and 2 George St., Mansion House, London, E. C.

"Which said contract was on the 5th day of March, 1886, assigned by the said Kensington & Co. to the said William Sturges, and as to what pay, if any, said Sturges was to receive from said syndicate, or the members thereof, for his services and expenses in connection with said contract or acts done thereunder, and also as to what interest, if any, said Bessie McLeod Sturges has or had in the said contract or in the remuneration, if any, which the said syndicate was or may be found liable to pay to the said William Sturges in connection therewith.

"*Second*—As to the liability, if any, of the said Capitol Freehold Land and Investment Company (hereinafter re-

ferred to as the Capitol Company) to the said Sturges for services rendered by said Sturges in or about the promotion and organization of said company, or rendered to said company since the date of its organization, or in or about the selling of the debentures of said Capitol Company, or in or about its business, and what claim, if any, said Sturges has to any shares of stock of said Capitol Company.

"*Third*—How much, if anything, is due and owing to said William Sturges from the said syndicate, or any member thereof, for services performed or expenses incurred for said syndicate or for said Capitol Company in or about the promotion and organization of said Capitol Company, or in or about the sale of its debentures, or in or about the business of said Capitol Company, from the commencement of the year 1884 down to the present time, and also what sum of money or other consideration, if any, was due and owing to said William Sturges for services performed during said last mentioned period for the said syndicate in efforts to sell lands for said syndicate, or to raise money by mortgage upon certain lands owned by said syndicate under a certain contract for the building of a State House for the State of Texas, and for services on behalf of said syndicate in connection with the promotion and organization of said Capitol Company, the selling of its debentures and attending to the interests of said syndicate in connection with said Capitol Company, and for attending to the interests of said company and said syndicate in any other way or manner during said period, or for any services rendered or expenses incurred in any way or manner by the said Sturges for the said syndicate from the year 1883 down to the present time.

"*Fourth*—What sum of money, if any, is due upon a certain alleged loan of $140,000 made by the said John V. Farwell to the said William Sturges, for which said Sturges gave his note dated June 24, 1889, payable in one year, with six per cent per annum interest, secured by

collaterals, with power of sale, and collateral securities, being 6136 shares of stock in the said Capitol Company and seven shares of stock of the Sonora Land Company.

"*Fifth*—As to who is the owner and entitled to a certain sum of $18,000 deposited with John V. Farwell & Co., or to the credit. of said John V. Farwell, which were part of the proceeds of a certain sale made by one Travers of certain property known as a part of the Grace Furnace property, and as to how said sum of money should be applied in the accounting among the parties hereto; also, as to the amount paid said William Sturges, or to others for him, from time to time, upon account of his said claim for services in money, stocks or a transfer of property, real or personal, to, for or on behalf or at the request of said Sturges.

"*Sixth*—As to whether certain eighty lots in Smith Moore's addition to the city of Marquette, State of Michigan, belonged to the said Bessie McLeod Sturges or to the said John V. Farwell, or to any other or others of the parties hereto, and as to what claims or equities said John V. Farwell has against said property by reason of the payment of taxes or otherwise.

"*Seventh*—As to the rights and equities existing between the said syndicate and the said William Sturges, and as between the respective parties to this submission, growing out of the said mentioned services of said William Sturges and said fifty per cent Kensington contract, and a certain rebate agreement connected therewith and growing out of certain arbitration agreements made between said Sturges and said syndicate, or some members thereof, in regard to the said mentioned services of the said Sturges and his claims as to the said contract of the Kensington Company, which was assigned to him as hereinbefore mentioned.

"*Eighth*—And all matters in controversy between the parties to said agreements of submission, and their rights

and equities, respectively, in the matters hereinafter, con-
cerning which there are any findings or adjudications.

"The court finds the substantial facts which are nec-
essary to be set out in this decree to be as follows:   That
in 1883 John V. Farwell, Charles B. Farwell and Abner
Taylor, known as the 'Syndicate,' were the owners of a
certain contract with the State of Texas, whereby, in con-
sideration of 3,000,000 acres of land to be deeded to them
or their assigns by the said State of Texas, from time
to time, as the work progressed, they agreed to erect a
State House or capitol building for said State, accord-
ing to certain plans and specifications; that in 1883 some
efforts were made by the syndicate to raise money for the
erection of the State House by a sale of the lands, or by
borrowing upon them as security in the United States,
and that John V. Farwell, while in Europe, in that year
made some efforts in the same direction in England, but
that all said efforts during said year were failures.   Said
syndicate commenced work upon the foundation of said
State House with money furnished by the syndicate itself,
and the evidence tends to prove that by May 1, 1884, the
syndicate had expended several hundred thousand dol-
lars in the work, and was very anxious to raise the money
necessary for its further prosecution, either by the sale
of the land or by borrowing upon the same."

The decree then recites the facts of the undertaking
by William Sturges to promote the scheme of raising
money in England by borrowing upon bonds to be issued
upon security of the land, or shares of stock in a company
to be formed, or by sale of such lands or shares of stock;
of the various steps taken; of the final success of the
scheme; of certain indebtedness of Sturges to plaintiff in
error of upwards of $100,000; of the loan by the latter to
the former, aside from said indebtedness, of $140,000, se-
cured by note and by certain stocks as collateral; of the
one-quarter interest acquired by said Sturges in certain
contracts which were afterward assigned by third par-

ties to Sturges for the benefit of the syndicate; of the agreement that after all said first mentioned indebtedness of said Sturges to plaintiff in error should be paid out of the said interest of Sturges the balance was to go to his wife, the said Bessie McLeod Sturges. The decree contains a further extensive finding of facts which it is not thought necessary to set out here, but which may be found set out in full in *Farwell* v. *Sturges*, 58 Ill. App. 462. But the decree found that said one-quarter interest of said Sturges was worth, over and above said first mentioned indebtedness, $75,000, and that the said syndicate should account for and pay to said Bessie McLeod Sturges, who was the owner thereof, the said sum of $75,000; that said William Sturges had rendered other services, and was entitled therefor, and for other matters stated, to a large sum, amounting to $110,590.43, which should be applied as a credit upon said note of $140,000, and that the balance of $29,409.57 should be paid by said William Sturges, and in default that the stocks pledged as collateral, and which, subject to such pledge, belonged to Bessie McLeod Sturges, should be sold to pay the same; that said eighty lots in Marquette, Michigan, belonged to said Mrs. Sturges and not to plaintiff in error, and that upon payment by her to plaintiff in error of $3995.62, which he had expended for taxes, with five per cent interest thereon, he should convey said lots to her. It was further ordered that execution or other process usual to courts of chancery issue to enforce the decree upon motion, if found necessary, and that each party pay his own costs.

Defendants in error have suggested in this court a diminution of the record, and have presented and asked leave to file a further record, which it is claimed was omitted from the transcript filed by plaintiff in error. This transcript, omitting the *placita*, which shows proceedings before the same judge at the February term, 1894, is as follows:

"Be it remembered, that at the term aforesaid, to-wit, on the 9th day of March, A. D. 1894, the following among other proceedings were·had and entered of record in said court, to-wit:

"WILLIAM STURGES et al.
               v.          }  *Stipulation and submission.*
JOHN V. FARWELL et al.

"On reading the stipulation filed herein, it is ordered that the said stipulation and agreement of submission of certain matters in controversy between said parties to Hon. Murray F. Tuley, one of the judges of the circuit court of Cook county, for his determination without a jury, and from which said determination there shall be no appeal, be spread at large upon the records of this court; and it is further ordered that the hearing of said matters be and hereby is set for Wednesday, April 4, 1894, and that cause shall then be tried without further delay.

"In the matter of the submission of the differences between ·William Sturges and Bessie McLeod Sturges, his wife, of the one part, and John V. Farwell, C. B. Farwell, Abner Taylor and the Capitol Freehold Land and Investment Company, (Limited,) of the other part.— Stipulation of submission.—Before Hon. Murray F. Tuley.

"It is hereby stipulated and agreed that the accompanying paper be filed as the stipulation and agreement between the parties, and that the hearing may be set for Wednesday, the 4th day of April, 1894, and that the cause shall then be tried without further delay.

GEORGE F. WESTOVER,
*For John V. Farwell, C. B. Farwell, Abner Taylor and*
*Capitol Freehold Land and Investment Co.*

HENRY S. MUNROE,
*Solicitor for Wm. Sturges and Bessie McLeod Sturges.*

"*Stipulation of submission.—In the circuit court of Cook county,*
*State of Illinois.*

"*First*—We, John V. Farwell, C. B. Farwell, Abner Taylor and the Capitol Freehold Land and Investment

Company, (Limited,) of the one part, and William Sturges and Bessie McLeod Sturges of the other part, do hereby agree to submit to Judge Murray F. Tuley, of said court, certain matters in controversy between us, for his determination, without a jury, he to hear the same within such reasonable time as may be proper and necessary for the separate parties hereto to be prepared for such hearing, and to enter the judgment or decree of the court therein within a reasonable time after such hearing shall be concluded; that the matters submitted herein shall include all matters of difference whatsoever between the parties of the one part, or either of them, and the parties of the other part, or either of them, excepting only the matters at issue between the said Bessie McLeod Sturges and the said John V. Farwell in a certain cause pending in the United States Circuit Court for the Northern District of Illinois. All other suits or proceedings, of every name and nature, between the parties of the one part, or either of them, or the parties of the other part, or either of them, shall be dismissed, discontinued and withdrawn, without prejudice to the rights of any party hereto.

"*Second*—That said judgment or decree shall contain a statement as to what matters in controversy were so submitted, and such statement thereof shall be conclusive.

"*Third*—That no record, except of this agreement and of such judgment or decree, shall be made as to the matters in controversy so submitted or to the proceedings had on the hearing thereof.

"*Fourth*—That such judgment or decree may be enforced in like manner as other judgments and decrees of such court.

"*Fifth*—That we, each to the others, hereby waive all rights of appeal from such judgment or decree, and release all errors that may intervene in the hearing of the matter so submitted and in the entering up of the judgment or decree therein, and agree that this release of

errors may be plead in bar of any writ of error that may be issued out as to such judgment or decree.

"Witness our hands and seals this 23d day of May, 1892.

| | |
|---|---|
| JOHN V. FARWELL, | [Seal.] |
| C. B. FARWELL, | [Seal.] |
| ABNER TAYLOR, | [Seal.] |
| THE CAPITOL FREEHOLD LAND | |
| AND INVESTMENT COMPANY, | [Seal.] |
| WILLIAM STURGES, | [Seal.] |
| BESSIE McLEOD STURGES, | [Seal.] |
| MORAN, KRAUS & MAYER, AND | |
| MUNROE & THORNTON, | |

*Solicitors for Defendants in Error.*"

The statute under which the proceedings were had in the circuit court is as follows:

"An act to enable parties to avoid delay in the administration of justice.—Approved June 17, 1887.—In force July 1, 1887.

"Sec. 1. That any two or more persons or corporations may appear, in person or by attorney, in any circuit court, (or in the Superior Court of Cook county,) and submit to any judge thereof, orally and without formal pleadings, any matter in controversy, having first entered into a written agreement (to be entered of record) and substantially in the following form, to-wit:

"*In the Circuit Court of...... ..... County:*

"*First*—We (here insert names) do hereby mutually agree to submit to Judge (here insert name), of said court, certain matters in controversy between us for his determination, without a jury, he to hear the same forthwith, and to enter the judgment or decree of the court therein within (here insert number of days or 'forthwith') days after such hearing is concluded.

"*Second*—That said judgment or decree shall contain a statement as to what matters in controversy were so submitted, and such statement thereof shall be conclusive.

"*Third*—That no record, except of this agreement and of such judgment or decree, shall be made as to the matters in controversy so submitted, or as to the proceedings had on the hearing thereof.

"*Fourth*—That such judgment or decree may be enforced in like manner as other judgments and decrees of such court.

"*Fifth*—That we, each to the other, hereby waive all right of appeal from such judgment or decree, and release all errors that may intervene in the hearing of the matter so submitted and in the entering up of the judgment or the decree therein, and agree that this release of errors may be plead in bar of any writ of error that may be sued out as to such judgment or decree.

"Witness our hands and seals this......day of............

A. D......                        ...............[Seal.]

                               ...............[Seal.]"

"Such agreement shall be signed by the parties in person or by duly authorized attorney in fact, and when so executed shall be of binding force upon the parties thereto in all the courts of this State.

"Sec. 2. It shall be the duty of such judge to proceed and in a summary manner to hear and determine the matters so submitted, and he shall enter a judgment or decree therein within the time fixed in said agreement, which said judgment or decree shall be final and conclusive and may be enforced in like manner as other judgments or decrees of such court, but no appeal shall be allowed therefrom."

TENNEY, MCCONNELL & COFFEEN, (S. P. SHOPE, of counsel,) for plaintiff in error.

MONROE & THORNTON, and MORAN, KRAUS & MAYER, for defendant in error Bessie McLeod Sturges.

JAMES H. WILKERSON, administrator, *pro se.*

Mr. JUSTICE CARTER delivered the opinion of the court:

It was shown on the suggestion of a diminution of the record and motion for leave to file the additional record, the decision of which was reserved to the final hearing, that the cause in the circuit court mentioned in such additional record and the cause mentioned in the first transcript filed as a return to the writ of error were one and

the same, though it cannot be so determined from the certificates of the clerk. No attempt is made by plaintiff in error to disprove the showing made that the cause mentioned in the additional record, and of which it is in part a transcript, is the same cause in which the final decree was rendered, except that by his affidavit and others it is denied that the statutory agreement recited in the additional record was executed by any of the parties whose names appear signed thereto, except William Sturges. It is also denied by the Farwells that they authorized any such signing, or that they knew of the existence of said agreement, or the record thereof, until after the final decree. It is manifest that we cannot in this proceeding and on affidavits try the question as to whether the parties did or did not execute some original paper writing of which a record has been made in the cause in the court below. The only questions on this motion are, Was any part of the record omitted in the first transcript? And, Is the additional record certified to us such omitted part? We are satisfied that both of these questions must be answered in the affirmative, and that the additional record should be filed as a part of the record in said cause. It will be so ordered. *Schirmer* v. *People*, 33 Ill. 276; *Goodrich* v. *Cook*, 81 id. 41.

The record contains inherent evidence that the proceedings certified in the two transcripts were all had in the same cause. There is identity of names of parties and of the matters to be submitted as recited in the record. The supplemental record shows that the agreement of submission transcribed in it was presented to Judge Tuley in the circuit court on March 9, 1894, at the February term, by the attorneys and solicitors of the respective parties, and that upon their written stipulation filed in the cause the following order of court was then entered of record: "On reading the stipulation filed herein, it is ordered that the said stipulation and agreement of submission of certain matters in controversy between said

parties to Hon. Murray F. Tuley, one of the judges of the circuit court of Cook county, for his determination without a jury, and from which said determination there shall be no appeal, be spread at large upon the records of this court; and it is further ordered that the hearing of said matters be and hereby is set for Wednesday, April 4, 1894, and that cause shall then be tried without further delay." It is urged, however, that the final decree recited that the cause came on to be heard upon the agreements of submission which are copied in it, and which, as will be noted from the statement of the case, are not identical with but are different in some respects from the agreement of submission contained in the supplemental or additional record, and that the decree itself shows that the hearing was had, not upon the last mentioned agreement, but upon the two recited in the decree.

There is some room for doubt as to the meaning of the decree on this subject, but we do not regard it as inconsistent with the position that the agreement mentioned in the supplemental record, which upon its face conformed, in every respect, to the statute, and which, when the cause was set by the court for a hearing, (and without which there was no cause,) was presented to the court and ordered spread upon the records, was the agreement upon which the judge relied as conferring, in connection with the appearance of the parties, jurisdiction to hear and determine the matter in dispute,—otherwise why order it to be entered of record as the statute requires? Otherwise why did the attorneys for the respective parties, omitting none, so stipulate and so represent to the court? Otherwise why did the trial take place in pursuance of this order so made? If the court or the parties did not regard this as the agreement under which the proceedings were being carried on, or if, for any reason, it was determined to disregard it and to proceed under other agreements, we would expect to find some record of such change of purpose, and not to find the court pro-

ceeding to hear a case of so complicated and important a character as to occupy its time and attention for many weeks, without any record whatever showing that there was any cause pending. The agreements recited in the decree had not been filed or entered of record, and were only finally recorded as a part of the decree. It may well be that after the final decree was rendered, and, as a part thereof, the agreements of submission had been entered of record, the statute requiring such entry of record was sufficiently complied with; but this view does not lessen the force of the argument that the trial judge would not be expected to proceed with the trial until the statutory agreement, which should precede or accompany the oral submission, had been entered of record, and that it would require something more than the expressions in the decree relied upon by counsel to lead to the conclusion that he did so.

The substance of the contention of plaintiff in error now is, when stated in plain language, that the trial judge was deceived and imposed upon, not by the parties, but by the counsel then representing them; that the agreement which was presented to him in court as one of the judges thereof, by counsel for all the parties, including plaintiff in error, as their agreement selecting him to hear and determine their controversies and to render a final judgment or decree under the statute which could not be reversed on error or appeal, and which he ordered to be spread upon the records of the court and upon which he set the cause for hearing, was not the agreement of the parties at all, nor of any of them except William Sturges; that although the names of all the parties, with seals attached, appeared thereto as if signed by themselves, such signatures were so affixed by unauthorized persons and without their knowledge; that although they afterward appeared in person in court in the cause before the same judge, with their counsel, (the same counsel who presented the agreement and caused it to be

entered of record,) as provided by the order when the agreement was so presented, and by their said counsel made an oral submission of the matters in controversy without the formality of written pleadings, as the statute provides, and induced the trial judge to hear and determine the same, and although this agreement was then of record in the same court and cause, as their counsel then well knew, they did not personally know of it, nor of any but the two agreements recited in the decree, and that therefore they, the several parties, are not bound by it, and that, unless jurisdiction was conferred by the agreements recited in the decree, the trial court had no authority to enter the decree and it must be reversed. That plaintiff in error is estopped from denying the execution and binding force of the agreement mentioned in the supplemental record, after he and all the parties, as well as the court, have so acted upon it, would seem too plain for argument. Whether his counsel had authority to execute and present to the court for him that agreement or not, and whether or not he knew of its existence and entry of record, the knowledge of his counsel was his knowledge, and he ratified, approved and confirmed it by acting under it and by appearing and inducing the court and the other parties to rely upon it, and he cannot now be heard here to dispute its binding force.

While the statute provides that no record of the matters in controversy shall be made except of the agreement and of the judgment or decree, it does not require the agreement to be set out or recited in the judgment or decree, and no inference can be drawn that the trial judge did not proceed under this agreement because he did not set it out in the decree. The substance of the two agreements which are recited is the same as that of the agreement mentioned in the supplemental record, but as Bessie McLeod Sturges did not sign the first of the two agreements and as the one she did sign was not under seal and it was executed, not by plaintiff in error person-

ally or by his attorney in fact, but only by his attorney, and the other parties to the record were not parties to it, it is contended that these agreements did not authorize the decree in favor of Bessie McLeod Sturges against plaintiff in error and the other members of the syndicate. When read and considered together, however, the plain intention appears to have been to make Mrs. Sturges one of the parties to the proceedings as outlined by the first of the two agreements. It may well have been because of the imperfection of these agreements, in view of the statutory requirements, that the more formal and complete agreement set out in the supplemental record was prepared and presented to the trial judge and entered upon the records of the court. We cannot upon the record before us, if we could under any circumstances, suppose, with counsel now representing plaintiff in error, that the learned judge of the trial court was engaged in trying certain controversies between Bessie McLeod Sturges and the plaintiff in error under one agreement, and certain other controversies between William Sturges and plaintiff in error and his associates under the other agreement, as separate causes, and that he then, ignoring all distinctions as to parties, entered a decree in favor of Mrs. Sturges, not against her adversary, but against parties to the other cause who had submitted for hearing no controversies with her.

There are many different points of view from which the case may be regarded, but they all lead to the same conclusion. If there be any doubt whether the decree was authorized by the two agreements recited in it, the construction placed upon the proceedings by the parties themselves was in harmony with the provisions of the agreement as set out in the supplemental record, and if that instrument were regarded only as making clear the construction put by the parties and the court upon the other two recited in the decree, the result would be the same,—to sustain the decree.

Question is raised as to the nature of the proceeding. Counsel insist that it is an arbitration, and that the award cannot stand unless the provisions of the statute are strictly complied with. The proceeding is not an arbitration, but is a proceeding in a court of general jurisdiction, before a judge thereof selected by the parties. By the ancient common law all pleadings were oral, and we see no reason why the parties may not, under the statute in question, without converting the trial judge into a mere arbitrator, waive the issuing of process and the formalities of written pleadings and trial by jury, and by agreement appear in a circuit court before a judge thereof selected by them, and under an agreement to be entered of record, as provided, make an oral submission of their controversies to such judge and be bound by the judgment or decree which shall be entered, releasing all errors and waiving the right of appeal. The statute requires the proceedings to be had in the circuit court or in the Superior Court of Cook county, and a judgment or decree to be entered which "may be enforced in like manner as other judgments or decrees of such court." The statute evidently contemplates that the proceeding shall be a proceeding in court, and one at law or in chancery, according to its nature.

It is next contended by plaintiff in error that defendant Bessie McLeod Sturges cannot avail herself of the agreement of submission releasing all errors, because she has not set the same up by plea in this court. It is, in effect, argued, that while the statute expressly provides that no appeal shall be allowed, it is provided only in the form of the agreement that by such agreement all errors that may intervene may be released, and that such release may be pleaded in bar of the writ of error. This contention is not altogether without force. The right of appeal exists only by statute, but a writ of error is a writ of right in common law cases, and the right to prosecute a writ of error in cases submitted under this statute is

recognized by the statute; and it would seem that the statute contemplates that the agreement releasing errors should be pleaded in bar. But this is a question of pleading, only. If the release of errors did not appear from the record itself made in the circuit court, it would, of course, be necessary to plead such release in this court, but as the agreement contains a release of errors and was made a part of the record below there would seem to be no necessity for a plea of a release of errors in this court. Upon the case as made by plaintiff in error upon the whole record it appears that he released all errors intervening in the court below, and the questions are presented by the record itself without being brought to our attention by plea. (*Austin* v. *Bainter*, 40 Ill. 82.) The joinder in error upon the record as it stands operates as a demurrer, and the court determines, as a question of law, from the record itself, that the errors alleged to appear therein are by the same record shown to have been released. It is, of course, true, that if the court did not have jurisdiction to render the decree no recital in the record that plaintiff in error had released all errors would avail. But we are of the opinion that jurisdiction was acquired and that the decree is conclusive. It will therefore be affirmed.

*Decree affirmed.*