DETERMINED IN THE

## FIRST DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1909.

---

West Chicago Park Commissioners, Appellant, v. Francis A. Riddle et al., Appellees.

### Gen. No. 14,875.

1. ARBITRATION AND AWARD—*effect of judgment rendered pursuant to Act entitled "An Act to enable parties to avoid delay in the administration of justice."* In rendering a judgment pursuant to a submission under this Act, the judge exercises a function of the judicial department of government; the judgment rendered is enforceable as are other judgments rendered by him, and is not subject to attack upon the grounds which may be availed of to attack ordinary awards; such a judgment is given the full force and credit that is accorded to other judgments rendered in ordinary proceedings.

2. ARBITRATION AND AWARD—*when judgment final in submission made under "An Act to enable parties to avoid delay in the administration of justice."* If the submission has been made by formal agreement, although sought to be rescinded, both the question as to the propriety of the court's action in refusing to permit a withdrawal and the question of the lack of a preliminary formal appearance and submission are waived by the fact that there was a full and complete hearing of the cause in which both parties participated.

3. ARBITRATION AND AWARD—*"An Act to enable parties to avoid delay in the administration of justice," construed.* The provision of this Act which provides that judgment shall be rendered within the time fixed in the agreement of submission, is merely directory and not mandatory.

(487),

4. JUDGMENTS—*when not subject to attack in chancery.* A judgment rendered by a common law court in the exercise of its ordinary common law jurisdiction cannot be interfered with by a court of equity, either because the judgment may be so erroneous, unjust and wrong as to shock the moral sense or because the evidence upon which it is based may in no wise support it or may give such slight and insufficient support that the conscience of the chancellor is shocked by the injustice of the judgment.

5. DEFINITIONS—*"hearing" defined.* The word "hearing" when used in connection with the trial of a law suit, includes not only the listening to the examination of the witnesses, but the entire judicial examination of the issues both of law and of fact between the parties. Consequently, the word embraces the listening to the arguments of counsel on both sides, if oral arguments are made, and the reading of the arguments if written or printed, and also the consideration of these arguments in respect to both points of law and of fact.

Bill for injunction. Appeal from the Circuit Court of Cook county; the Hon. GEORGE A. CARPENTER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Affirmed. Opinion filed October 29, 1909. Rehearing denied November 12, 1909.

Statement by the Court. The bill of complaint before us on this appeal is one filed by appellant in the Circuit Court to impeach a judgment rendered in that court, on December 6, 1905, for $20,583.53. The bill prays, principally, that the judgment may be decreed to be void and that the collection thereof may be perpetually enjoined. The judgment was rendered under "An Act to enable parties to avoid delay in the administration of justice," adopted in 1887 (Rev. Stats. Practice Act, secs. 100, 101). Francis A. Riddle, the judgment creditor, and Carleton Hudson, assignee of the judgment, the parties defendant to the bill, demurred generally to appellant's amended bill of complaint. The chancellor sustained the demurrer and, as appellant stood by its bill, the bill was dismissed for want of equity. Appellant prosecutes this appeal to reverse that decree.

Mr. Riddle's claim, upon which judgment was rendered against appellant Park Commissioners, was for

his salary as attorney for part of a year's term that he did not serve because he was discharged, $583.33; for extra compensation above his salary for services rendered in the Dreyer litigation, $15,000; for extra compensation, for services in connection with the Dreyer litigation, in negotiating a settlement with the Comptroller of Currency and the receiver of the National Bank of Illinois, collecting part of the decree against the bank and procuring a certificate for the balance to be paid in due course of administration, $3\frac{1}{2}\%$ of amount collected, $7,742.32; for extra compensation in three other matters, viz.: a special assessment for Washington boulevard $1,798.85, writ of error in Cummings matter $1,000, writ of error in the Farrell matter $1,500, total $4,298.85. Of the amounts claimed the first two items and $5,000 of the third item were allowed and the rest disallowed.

The proceedings resulting in the judgment, including the evidence, appear at large by exhibits attached to the bill.

The validity of the judgment is attacked, because there was no jurisdiction of the person of the defendant, Park Commissioners; because of such procedure during the trial as terminated the jurisdiction before the rendition of the judgment and because, before the trial judge, there was not only no evidence tending to entitle Riddle to a judgment, so that the judgment in his favor is totally unsupported by the evidence, but, more than that, the judgment rendered is squarely in conflict with all the evidence adduced and, it is contended, when, in such a proceeding as that here involved, a judgment is rendered under such circumstances it is fraudulent and void.

In regard to the inception of, and procedure in, the proceeding attacked the bill alleges: That at a meeting of the West Chicago Park Commissioners, on June 27, 1905, when only a bare quorum, of the commissioners, was present, that is, four out of seven, a proposition from Mr. Riddle for arbitration of his claim,

previously declined twice, was brought forward and a resolution to arbitrate the same passed by a vote of three to one; that no previous notice or intimation was given to any of the Park Commissioners, except those who were friendly to Riddle and in advance committed to his arbitration proposal, was given that the matter of this claim of Riddle would be presented at that meeting; that at that meeting the resolution was "purposely not presented in the regular order of business, and was withheld until after a motion to adjourn was made and ostensibly carried and the public and press reporters had left the room under such belief, when it was presented and passed or announced as passed by the vote of three of said commissioners, as aforesaid," and that the minutes of said meeting have never been approved; that the resolution then introduced and passed as aforesaid is as follows:

"Whereas, Francis A. Riddle, of Chicago, claims that there is due and owing to him from the West Chicago Park Commissioners certain sum or sums of money for professional services by him rendered to said West Chicago Park Commissioners; and,

Whereas, said Riddle has begun and there is now pending a suit by him against the said West Chicago Park Commissioners, in which suit said Riddle seeks to recover for services rendered by him to said West Chicago Park Commissioners; and,

Whereas, The West Chicago Park Commissioners and said Riddle desire that the matter of his claims against this body be adjusted and determined without delay;

Therefore, The President and Secretary of this Board are authorized and empowered to enter into an agreement with the said Riddle for the determination and final adjudication of the said claims of the said Riddle, such agreement to be under and in pursuance of an act entitled 'An Act to avoid delay in the administration of justice,' approved June 17, 1887, in force July 1, 1887; such agreement to be in writing, signed by the President and Secretary of said Park Board and attested by the seal thereof, and also to be

signed and sealed by the said Francis A. Riddle in accordance with the provisions of the said statute; and,

Resolved further, That the President and Secretary of this Board are hereby authorized to agree with said Francis A. Riddle upon some judge, either of the Superior or Circuit Court of Cook County, who shall try and dispose of the questions arising upon the claims of said Riddle according to the said statute so approved June 17, 1887, and in force July 1, 1887, and also agree that such judge before whom such matter shall be heard shall within ten days after the concluding of the hearing thereof enter final judgment therein.''

That an agrement was afterwards signed by the president and secretary of the Commissioners, as the basis for the submission of the controversy to a judge or arbitrator, but that agreement was not signed by any duly authorized attorney in fact for the Park Commissioners and is invalid; that said agreement is as follows:

''State of Illinois, County of Cook, ss.
In the Circuit Court of Cook County.
Francis A. Riddle
vs.
West Chicago Park Commissioners.

*First.* We, Francis A. Riddle and the West Chicago Park Commissioners, hereby mutually agree to submit to Judge Lockwood Honore of the Circuit Court of Cook County, certain matters in controversy between us, for his determination without a jury, he to hear the same forthwith, and to enter the judgment or decree of the court therein within ten days, after such hearing is concluded; the matters in controversy so to be submitted being those now pending and undetermined in a certain suit brought in the Superior Court of Cook County by the said Francis A. Riddle against the said West Chicago Park Commissioners.

*Second.* That such judgment or decree shall contain a statement as to what matters in controversy were so submitted and such statement thereof shall be conclusive.

*Third.* That no record except of this agreement and of such judgment or decree shall be made as to the matters in controversy so submitted, or as to the proceedings had on the hearing thereof.

*Fourth.* That such judgment or decree may be enforced in like manner as other judgments and decrees of such court.

*Fifth.* That we each to the other hereby waive all right of appeal from such judgment or decree and release all errors that may intervene in the hearing of the matters so submitted, and in the entering up of the judgment or decree herein and agree that this release of error may be plead in bar of any writ of error that may be sued out as to such judgment or decree.

In witness whereof the said Francis A. Riddle has on this 5th day of July, A. D. 1905, set his hand and seal, and the West Chicago Park Commissioners have caused this instrument to be executed, signed by its President and Secretary, and attested by its seal on this the 5th day of July, A. D. 1905.

(Signed) FRANCIS A. RIDDLE. (Seal)

WEST CHICAGO PARK COMMISSIONERS. (Seal)

(Signed) By FRED A. BANGS.

Pres. of West Chicago Park Commissioners.

By WALTER FIELDHOUSE,

Sec'y of West Chicago Park Commissioners.

(West Chicago Park Seal.)

Commissioners' O. K. as to form.

DELAVAN B. COLE, Atty."

That thereafter nothing was done in said proceeding by either party until "on or about July 13, 1905, said Riddle, or some one in his behalf, and in the absence of complainant and of any counsel or other person professing to represent it and without any notice to complainant, filed with the clerk of said court a duplicate of the said agreement for submission; and the said clerk, then or later, pretended to write upon the docket of the court a cause as pending, entitling the same as 'Francis A. Riddle vs. West Chicago Park

Commissioners, Assumpsit' ''; that on July 21, 1905, the Park Commissioners rescinded the resolution of June 27, 1905, by a resolution as follows:

"Whereas, in pursuance of a resolution of the Board of West Chicago Park Commissioners, purporting to have been passed on June 27, A. D. 1905, and purporting to authorize the submission of the claim of F. A. Riddle for extra attorney's fees and for professional services which he claims to have rendered for said Board, and purporting to authorize the president and secretary of said Board to sign a stipulation submitting said claim of F. A. Riddle, amounting to the sum of $27,624.50, to Hon. Lockwood Honore, Circuit Court Judge, under the statute of this State commonly known as the 'Tuley Act;' and

Whereas, it appears from the records of the Board of West Chicago Park Commissioners that the claim of said F. A. Riddle, being for the very same services mentioned and included in the above pretended resolution, was, on the 23rd day of July, A. D. 1901, duly passed upon by the Board of West Chicago Park Commissioners, and by vote of said Board said claim of said Riddle was rejected; and

Whereas, on the 30th day of December, A. D. 1904, the said claim of said F. A. Riddle aforesaid, was again presented to the Board of West Chicago Park Commissioners for their consideration, and was again rejected by said Board by three votes in the affirmative and three votes in the negative; and

Whereas, it also appears from the records aforesaid that during the time while said F. A. Riddle claims to have rendered extra professional services as an attorney at law for the said Board of West Chicago Park Commissioners, and mentioned in the resolution purporting to have been passed on the 27th day of June, 1905, the said F. A. Riddle was regularly employed by the said Board as its attorney at a regular fixed and stipulated sum per month, which monthly payments were paid to him in full payment and satisfaction of and for any and all services rendered by said F. A. Riddle as an attorney, and all professional services rendered by him for said Board of West Chi-

494 APPELLATE COURTS OF ILLINOIS.

West Chicago Park Commissioners v. Riddle, 151 Ill. App. 487.

cago Park Commissioners during all of said time; and

Whereas, the records of said Board further show that during the very same time when said F. A. Riddle claims to have rendered extra professional services as set forth in his claim, and referred to in the resolution purporting to have been passed on June 27, 1905, the said Board of West Chicago Park Commissioners were obliged to employ three other attorneys to assist the said F. A. Riddle in the transaction of necessary park business and to pay to each of said three attorneys large sums of money; and

Whereas, by the record of the above pretended proceeding of June 27, 1905, (this being the last act of the retiring Board) it appears that but three of the seven commissioners constituting such Board of West Chicago Park Commissioners voted for such resolution; and

Whereas, The above pretended resolution of June 27, 1905, received but a minority vote of said Board of West Chicago Park Commissioners, and therefore said resolution conferred no legal authority upon the president and secretary of the said Board of West Chicago Park Commissioners to sign their names thereto as president and secretary, or to sign the name of the West Chicago Park Commissioners, or to affix the corporate seal of said Board to the stipulation filed in the Circuit Court of Cook County, in the State of Illinois, on the 13th day of July, 1905, entitled 'F. A. Riddle v. West Chicago Park Commissioners,' and that this Board is advised and is of the opinion that such pretended submission was wholly without legal authority on the part of said president and secretary of said Board of West Chicago Park Commissioners; be it therefore

Resolved, By the West Chicago Park Commissioners that the pretended action of the minority members of the Board of West Chicago Park Commissioners on June 27, 1905, and relating to the claim of the said F. A. Riddle, is hereby declared to be wholly void, of no force or effect.''

That no action whatever was taken in said pretended cause or proceeding until after the passage of said

rescission resolution, other than said act of Riddle, or in his behalf, on or about July 13, 1905, nor was there any appearance before the judge or arbitrator or in the Circuit Court by the complainant or by Riddle or by any one in behalf of either complainant or Riddle prior to that rescission; that immediately after the passage of the rescission resolution notice was given to Riddle that a motion would be made to dismiss the proceeding out of court and, on July 22, 1905, counsel for both parties accordingly appeared before the trial judge, Judge Honore, in open court, and counsel for complainant then, before any step had been taken or evidence heard, moved for a dismissal, protested against the taking of any further steps, and, in support of the motion, presented a certified copy of the said rescission resolution; that Judge Honore then announced that on August 1, 1905, he would hear further argument upon the motion; that, on August 1, 1905, Judge Honore called the cause for trial and, at the outset, before any evidence was offered or heard and before any other proceedings were had or taken, complainant, by its attorney, again moved for the dismissal of the proceeding, on the ground that the judge had no jurisdiction, and protested against any further proceeding therein but the motion was overruled and the protest remained unheeded; that on said August 1, Judge Honore also stated he would call the cause for trial and proceed with the hearing thereof on September 20, 1905, and, at the same time, announced "that complainant would be understood as thereafter objecting to said proceeding, at all stages, without making any further objections thereto or making, in the future, any further motions therein to dismiss the same;" that on said September 20, although complainant, by its counsel, again objected and protested against any further proceedings in the matter, said judge proceeded with the trial and with the taking of testimony and from time to time continued the taking of evidence therein, on behalf of said Riddle, and finally entered

496     Appellate Courts of Illinois.

West Chicago Park Commissioners v. Riddle, 151 Ill. App. 487.

said judgment in favor of said Riddle; that the hearing of the cause was completed on September 28, 1905, and the parties with their counsel then left the court without any order of continuance being made; that until the rendition of said judgment no order was entered in said cause, except orders of continuance from time to time, the first of which orders of continuance was entered on October 4, 1905, and none of them was made upon any motion by or on behalf of complainant; that some, if not all, of these orders of continuance were made by the trial judge at his own instance and of his own volition without the presence or even the knowledge of either of the parties; that one of said orders of continuance, which continued the cause to October 30, 1905, was entered on October 23, 1905; that a day or two before October 26, 1905, Judge Honore notified the attorneys for the parties that on that day he would, of his own motion, hear further evidence, and, over the objection of complainant, Judge Honore did on that day proceed with the hearing of further evidence and thereafter the taking of evidence was continued from time to time until November 1, 1905, when the hearing of evidence was completed; that complainant authorized no one to appear for it in said cause or to submit the controversy in its behalf and, except to object to his proceeding therewith, no one did appear for it or on its behalf in said cause before said judge at any time; that, except as it appeared in the final judgment order, said agreement of submission was never entered of record nor was there any motion or request by either party that it be so entered, neither was any attempt made to enter said agreement of record, otherwise than in the said judgment order.

Exhibit 5, attached to the amended bill, is alleged to be "a full and accurate report and exhibit of all the evidence given in said pretended cause before said judge or arbiter," and, upon the face thereof, that exhibit appears to be a report of all the proceedings and the evidence before Judge Honore, taken steno-

graphically from day to day beginning with July 22, 1905. From this exhibit it appears that Mr. Benjamin F. Richolson appeared before Judge Honore on July 22, 1905, as specially authorized by the Park Commissioners to procure the dismissal of the cause out of court. But, in connection with the evidence and the taking thereof, it appears, also, that, beginning with the introduction of the first evidence on September 20, 1905, and continuously until the conclusion of the evidence, Mr. Richolson was present and participated at all the hearings and that then and thereafter, in argument and by the presentation of written briefs and arguments, Mr. Richolson fully contested the merits on behalf of the Park Commissioners. He, on appellant's behalf, from time to time objected to the competency and materiality of evidence, cross-examined plaintiff's witnesses and, after the plaintiff closed his case, produced witnesses and introduced counter evidence on behalf of the Park Commissioners. In other words, he, on behalf of appellant, participated in the trial of the merits and, in that respect, conducted the appellant's side from the start to the finish of the trial. Mr. Delavan B. Cole was also associated with Mr. Richolson, part of the time, in representing appellant in the trial. In the bill it is alleged that in response to requests of Judge Honore, counsel for both sides presented to him briefs and arguments, ''outside of court,'' the last being presented on November 10, 1905.

As to the attack upon the judgment on the ground that it was inequitable upon the merits and erroneous it is useless to refer to the allegations of the bill in that respect, because the court considers the judgment as one rendered by a court of common law jurisdiction in the exercise of its ordinary jurisdiction, and a bill in equity does not lie on the ground of the judgment being inequitable and erroneous.

The grounds of the attack upon the judgment in support of the theory that the judgment is void because

498    APPELLATE COURTS OF ILLINOIS.

West Chicago Park Commissioners v. Riddle, 151 Ill. App. 487.

fraudulent, as stated in the bill, are in substance and effect: that there was absolutely no evidence adduced before the trial judge which tended to support the judgment and the judgment was rendered in square opposition to the evidence adduced; that there was no evidence before the trial judge tending to show or upon which could properly and lawfully be predicated a finding of an employment of Riddle before his employment as general attorney and counsel for appellant or an employment to render any special or extra services in the Dreyer litigation, or a finding of an agreement to pay him any extra or special compensation for services in that litigation; that Riddle only rendered services of a supervisory character, in that litigation, and that as he was the general attorney and counsel of the Park Commissioners, a municipal corporation, while rendering whatever services he did render, it was unlawful to pay him or to contract with him that he should be paid any extra or special compensation beyond his salary for services either in that litigation or in the compromise and collection subsequent to the rendition of the decree against the bank; that the amount of the judgment is grossly in excess of the value of any services rendered; and that as the Park Commissioners undoubtedly had the power, under the law, to discharge Mr. Riddle, at any point of time they might desire to do so, therefore there was no room for the rendition of a judgment against the Park Commissioners for salary for the unexpired portion of the year 1900.

HARRY S. MECARTNEY, for appellant.

ARBA N. WATERMAN and WILLIAM SHERMAN HAY, for appellee; HAY & BROWN, of counsel.

MR. PRESIDING JUSTICE CHYTRAUS delivered the opinion of the court.

CHICAGO—FIRST DISTRICT—OCTOBER, 1909. 499

West Chicago Park Commissioners v. Riddle, 151 Ill. App. 487.

At the beginning of the appellant's brief it is asserted of the bill herein that it "was filed to set aside an alleged award." Counsel for appellant fails to differentiate, in regard to contestability, between an award returned in an arbitration and a judgment rendered in a court of justice. Undoubtedly it is the law governing in respect to arbitrations *in pais* that while an award will not be set aside because, by the light of the evidence that was introduced before the arbitrators, it may be found not to be sustained by the weight of the evidence, yet, when, by that light, the award is found to be so grossly wrong and unjust as to shock the moral sense and an inspection of the evidence upon which it is based discloses either no support or foundation for the award or such slight and insufficient foundation that the conscience is shocked by the injustice, then the award will be set aside upon a bill in equity. In Morse on Arbitration and Award, page 539, it is said, in this connection, that a common case where fraud or corruption is inferred is where the award is obviously and extremely unjust. In such an event, it is said, the court will imperatively presume the corruption or misconduct of the arbitrators and will vacate their award, upon proceedings in equity instituted for that purpose, and authorities are cited. Later cases laying down that rule with clearness and distinctness are Perry v. Insurance Co., 137 N. Car. 402, and Insurance Company v. Hegewald, 161 Ind. 631. The rule is also recognized and conceded in Van Cortlandt v. Underhill, 17 Johns. (N. Y.) 405, and in Burchell v. Marsh, 17 How. (U. S.) 344. Arbitrations *in pais* are purely contractual transactions.

The same rule as to contestability seems to obtain even in arbitrations held under a statute or a rule of court. Anderson v. Taylor, 41 Ga. 10. The distinction between these arbitrations and arbitrations *in pais* is that in the former the arbitrators selected make a return of their award into some court of law where objections or exceptions may be filed to their award,

When objections or exceptions are filed there is a hearing upon these by the court who then either affirms the award and enters a judgment of the court thereupon or disaffirms the award and enters judgment nullifying the award. These proceedings are in their nature judicial, but there seems to be a limit upon the extent to which the awards therein may be questioned by the courts of law upon such objections or exceptions. In the last cited case, at page 19, it is said: "It appears to be settled that a *court of law* will not, even when the submission is made a rule of court, enter into the *merits* of an award, but will look only to legal objections on the face of it, or such as go to the misbehavior of the arbitrators." We are not, however, at this time concerned with such arbitrations.

As to the fraud that will nullify the decision of a special statutory tribunal, Mr. Justice Peckham, speaking for the court in Fallbrook Irrigation District v. Bradley, 164 U. S. 112, said: "Very possibly a decision by a statutory tribunal which included tracts of land within the district that plainly could not, by any fair or proper view of the facts, be benefited by irrigation, would be the subject of a review in some forum and of a reversal by the courts, on the ground that the decision was based not alone upon no evidence in its favor, but that it was actually opposed to all the evidence and to the plain and uncontradicted facts of common knowledge, and was given in bad faith. In such case, the result would not have been the result of fair or honest, although grossly mistaken, judgment, but would be based upon bad faith and fraud, and so could not be conclusive in the nature of things."

The obstacle appellant encounters in the case at bar, however, is that the attack made by the bill is not upon an award, as argued or assumed throughout appellant's brief; nor is it upon a judgment of a special statutory tribunal. The attack is upon a judgment of a common law court—a regularly constituted court of justice. The statutory enactment, under which the

CHICAGO—FIRST DISTRICT—OCTOBER, 1909. 501

West Chicago Park Commissioners v. Riddle, 151 Ill. App. 487.

parties acted in submitting their controversy, is to the effect that the parties may appear in person or by attorney in court and that the judgment may be enforced as other judgments of the court. Furthermore it is settled, by the decision in the case of Farwell v. Sturges, 165 Ill. 252, 272, that such proceeding is not an arbitration, but a judicial proceeding in a court of general jurisdiction and one at law or in chancery, according to the nature of the particular case that may happen to be before the court. In rendering the judgment attacked Judge Honore was performing his duty as a Circuit Court judge and exercising the function of the judicial department—one of the three co-ordinate branches of the government of the State of Illinois. The dispensation of justice by the courts of the State is a governmental function and, in that respect, unlike a mere award, which obtains its validity, force and efficacy only from the private agreement of the parties to the arbitration. ''The submission is the agreement of the parties, and the arbitrators and courts can only carry it into effect, according to its terms and conditions.'' Buntain v. Curtis, 27 Ill. 373, 377; 1 Phillipps on Ev., (5th Am. Ed.) 196.

The general rule in case of an attack by a bill of complaint upon a judgment of a common law court, rendered in the exercise of that court's general common law jurisdiction, is stated in Bardonski v. Bardonski, 144 Ill. 284, 289, as follows: ''It is well settled that equity will not interfere with the enforcement of a judgment at law, unless the judgment debtor could not have availed himself of his defense at law, or was prevented from so doing by the fraud of the opposite party, or by accident or mistake unmixed with fault or negligence on his own part.''

No authority has been cited to us, and in our own research we have found none, holding that a judgment rendered by a common law court in the exercise of its ordinary common law jurisdiction may be interfered with by a court of equity either because the judgment

may be so erroneous, unjust and wrong as to shock the moral sense or because the evidence upon which it is based may in no wise support it or may give it merely such slight and insufficient support that the conscience of the chancellor is shocked by the injustice of the judgment. The jurisdiction of courts of equity in respect to granting new trials at law and nullifying or restraining the enforcement of judgments at law is well settled; but, among the recognized grounds for a court of equity exercising such jurisdiction, we find none such as the reasons for equitable intervention which are set up in appellant's bill. Courts of chancery cannot review the judgments of courts of law for errors in decisions upon either questions of fact or points of law, no matter how plain or obvious such errors may be.

It is contended that, although there was an agreement executed to submit the cause, under the act to enable parties to avoid delay, there was not such submission by appearance in court as the act requires and, furthermore, that there was a revocation of the submission, of which the judge to whom it was submitted was in due season informed, and, hence, it is argued, the judge who heard the cause was without jurisdiction to hear or to proceed with the same. Having considered, in connection with the allegations of the bill itself, the facts as they appear in "Exhibit 5," we do not see how appellant can now derive any benefit through these contentions, whether they be, in point of fact, well taken or not. The only reason why Judge Honore should not have proceeded with the hearing of the cause, would have been either because, notwithstanding appellant had entered into the agreement to dispose of the cause or controversy in the Circuit Court, according to the mode of procedure provided for by the act in question, yet appellant did not make the preliminary formal appearance in court provided for by the statute, or because appellant, before appearing, rescinded its resolution to submit and refused

to carry out its agreement in that respect. The appellant's difficulty in this connection lies in the fact that appellant subsequently undertook to experiment with the court and to speculate upon the result of a hearing. There is here no question but that appellant, by a formal agreement, had agreed to submit the cause, under the act in question, to the judge who heard it; but the question is whether there is any equity in the contention that appellant should have been permitted to refuse to carry out its contract.

The objection of lack of a preliminary formal appearance and submission we regard as waived by the fact that there was a full and complete hearing of the cause in which appellant participated. Appellant could not, so far as appears from this record, rightfully rescind its resolution of submission and refuse to carry out its agreement. There may be some question with reference to the effect of such rescission and refusal upon the rightfulness of the judge's proceeding with the hearing of the cause, but we think that by participating in the hearing, as appellant did, to the fullest extent, that question, if any there be, is foreclosed. When entering upon the hearing, appellant knew that one of two things would happen, either appellant or Mr. Riddle would prevail. Sitting as a court of equity in review of a chancellor's decree, we find no equity in the idea that appellant engaged in the hearing upon the condition that, if it prevailed, Mr. Riddle would be concluded by the judgment, but should he prevail equity would require that the judgment in his favor be set aside or the collection thereof restrained.

It is alleged in the bill ''That no one was authorized to appear for complainant in said pretended cause and to submit, in its behalf, said alleged controversy or any other controversy between said Riddle and complainant.'' When making this general allegation, appellant was fully acquainted with all that had occurred in court in connection with the hearing, yet the allegation does not specifically deny that the attorneys who

504     APPELLATE COURTS OF ILLINOIS.

West Chicago Park Commissioners v. Riddle, 151 Ill. App. 487.

contested the merits on appellant's behalf were authorized so to contest. In appellant's reply brief it is, so far as the present proposition is concerned, asserted that this allegation "stated merely the legal *effect,* as argued above, of proceeding with the hearing after the court had overruled an objection to jurisdiction, viz.: that it *amounted* to a mere 'protest against the claim of Riddle, in case the court, over complainant's objections, took cognizance thereof.' " Without this admission in this court, it would possibly have appeared that Mr. Richolson and Mr. Cole, reputable members of the bar of this court in good standing, had, without authority, appeared before Judge Honore and conducted a lengthy defense for appellant. This admission, however, relieves the situation. Pleading the legal effect of facts is not good pleading and does not tend to bring about the narrowest possible issue of fact, which is the office of pleadings. The facts in regard to what took place at the hearing appear from "Exhibit 5," which, as well as the bill itself, is a pleading of appellant. In "Exhibit 5" we find that, represented by Mr. Richolson and Mr. Cole, appellant had a full and complete hearing upon the merits and, upon the pleadings herein and upon this admission, the conclusion is inevitable that Mr. Richolson and Mr. Cole were authorized to appear for appellant in the hearing upon the merits. We also find, in "Exhibit 5," that Judge Honore, in disposing of appellant's motion to dismiss the cause on the ground of a want of jurisdiction in the court, at the commencement of the hearing, stated, "I will deny the motion at this time with leave to renew it when, on the state of the record, it becomes competent"—to which ruling an exception was taken by appellant. We do not find the motion renewed. The legal effect of appellant proceeding with the hearing after the court had overruled the objection to the jurisdiction was not such as appellant, according to the allegation in its bill, conceived it to be. Under the circumstances of this case, appellant submitted to the

jurisdiction of the particular judge and of the court by proceeding with the hearing upon the merits.

Moody v. Nelson, 60 Ill. 229, based upon Low v. Nolte, 15 Ill. 368, is not applicable upon the question that, by reason of the absence of a formal appearance and submission herein, has arisen here.

Various severe criticisms of the acts and doings of the trial judge, who rendered the judgment at law, are indulged in in the bill of complaint, and charges of prejudice and bias are also made, all of which, perhaps, would have been material, had he sat as merely an arbitrator, but cannot be considered inasmuch as he sat as a court.

Under a heading of: "As to the stipulation for a time limit for the award," it is argued that because the judgment was not rendered within the time limited by the agreement of the parties, therefore the judgment is void. In the statement of facts appellant's counsel informs us that "the judgment or decree was entered over two months after the hearing was concluded."

The statute provides that the judge shall proceed and in a summary manner hear and determine the matters so submitted "and he shall enter a judgment or decree therein, within the time fixed" in the agreement of the parties. Here the agreement of the parties is for the judge "to hear the same the controversy forthwith and to enter the judgment or decree of the court therein within ten days after such hearing is concluded."

It appears from the allegations of the bill that both parties presented briefs and arguments to Judge Honore and that the last of these was presented to him on November 10, 1905. On December 4, 1905, he informed the parties of his decision and thereafter the judgment order was drafted and the judgment entered on December 6, 1905.

Our Supreme Court has held that, in legal contemplation, the word "hearing," when used in connection

with the trial of a lawsuit, includes not only the listening to the examination of the witnesses but the entire judicial examination of the issues, both of law and of fact, between the parties. Glennon v. Britton, 155 Ill. 232. Consequently the word embraces the listening to the arguments of counsel on both sides if oral arguments are made and the reading of the arguments if written or printed arguments are presented; and, also, the consideration of these arguments in respect to both points of law and of fact. A less comprehensive meaning of the term would not give to parties such "hearing" as they are entitled to under the law. Besides, it may well be argued that the statutory provision, as to the time within which the judgment should be rendered is merely directory and not mandatory.

We regard the spreading of the submission agreement of record in connection with the entry of the judgment order, as was done in this case, sufficient, although the better practice would be to order that it be entered of record previous to the commencement of the hearing.

Other contentions are made, which have all been carefully considered, but we do not find any of them of such merit as would justify a reversal of the decree of the learned chancellor. Entertaining the views expressed we could not and do not, notwithstanding the extensive arguments made upon the merits, express any opinion in that regard.

*Affirmed.*