SHUFF, APPELLEE, *v.* SHUFF, APPELLANT.

(No. 4462—Decided November 3, 1954.)

*Messrs. Carson, Roderick & Holden,* for appellee.
*Mr. Stanley Denlinger,* for appellant.

HUNSICKER, J. This is an appeal on questions of law from a judgment of divorce entered by the Common Pleas Court of Summit County, Ohio, on September 11, 1950.

Ethel Shuff filed an action for alimony only, against her husband, Raymond Shuff, who, after service of summons filed a cross-petition for divorce. Personal service was obtained on these pleadings. Raymond Shuff then moved from Summit County, presumably to Toledo, Ohio.

Ethel Shuff thereafter filed an amended petition for divorce and alimony, and an affidavit for service of summons by publication based on the claim that the residence of Raymond Shuff was "unknown and cannot with reasonable diligence be ascertained."

The judgment entry of September 11, 1950, so far as material herein, recites that:

"This matter came on for hearing on January 3, 1950, on the amended petition of the plaintiff * * *. The court commenced to hear said case on its merits on January 3, 1950, said cause having been duly assigned for trial on said date. Thereafter, said hearing was recessed to January 13, 1950, at which time the court resumed the hearing of the issues in said cause on its merits. * * * the court does order this final judgment to be an order nunc pro tunc, operative in all respects and binding as of the January term of court, 1950, to wit: January 3, 1950."

On September 7, 1950, Ethel Shuff filed an affidavit which stated, in part, that "the whereabouts of the defendant is unknown to this plaintiff and though she has made diligent inquiry his present address could not be determined and that service of summons and a copy of the petition could not be made upon the defendant in this state of Ohio."

Thereafter, on August 19, 1953, Raymond Shuff filed

his petition to vacate the judgment of divorce granted
to Ethel Shuff, saying in such petition that:

"The affidavit required by the foregoing was not
filed before the hearing and as shown by the records
of the clerk of courts of this county was filed Septem-
ber 7, 1950, at 11:32 a. m., eight months after hearing
and purported judgment. Moreover at said time the
contents of said affidavit were wholly false and untrue.
By reason of which said judgment is a nullity, wholly
void and invalid."

The trial court refused to set aside the judgment,
and dismissed such petition to vacate. It is from this
judgment that Raymond Shuff appeals to this court.

Under the rule announced in *Cox* v. *Cox*, 104 Ohio
St., 611, 136 N. E., 823, and *Caswell* v. *Lermann*, 85
Ohio App., 200, 88 N. E. (2d), 405, a judgment over-
ruling a petition to vacate a prior judgment of divorce
is a final order from which an appeal on questions of
law may be taken. See: 2 Ohio Jurisprudence, Appel-
late Review, Section 71.

We have examined the record and find but one ques-
tion that needs to be discussed in these proceedings,
and that is: Where the residence of a defendant in
a divorce action is unknown, and cannot with reason-
able diligence be ascertained, is it mandatory, where
service of summons is made by publication, that the
second affidavit required by statute, be filed before the
taking of testimony in the trial of the divorce action,
in order to confer jurisdiction on the trial court?

Or, to state the problem in another way: Does the
phrase "before the hearing," as used in former Sec-
tion 11294, General Code (now Section 2703.16, Re-
vised Code), mean that, at the time of trial, but before
taking any testimony, the affidavit must be executed
and filed; and, if such order is not strictly complied
with, the court is without jurisdiction to conduct the
trial?

The Supreme Court of Ohio said, in *State* v. *Stevens,* 161 Ohio St., 432, 119 N. E. (2d), 616, that: "1. In the construction of a legislative enactment, the question is not what did the General Assembly intend to enact but what is the meaning of that which it did enact."

According to Black's Law Dictionary (3 Ed.), the word "hearing" has an established meaning in equity cases, and is broad enough to include the judicial examination of the issues between the parties, whether of law or of fact.

Although we have been unable to find a judicial definition of the word "hearing" in the decided cases in Ohio, we do discover that other jurisdictions have had occasion to give this word the meaning employed by the law.

In the case of *West Chicago Park Commissioners* v. *Riddle,* 151 Ill. App., 487, at pp. 505-506, that court said:

"Our Supreme Court has held that, in legal contemplation, the word 'hearing,' when used in connection with the trial of a lawsuit, includes not only the listening to the examination of the witnesses but the entire judicial examination of the issues, both of law and of fact, between the parties. * * * Consequently the word embraces the listening to the arguments of counsel on both sides if oral arguments are made and the reading of the arguments if written or printed arguments are presented; and, also, the consideration of these arguments in respect to both points of law and of fact. A less comprehensive meaning of the term would not give to parties such 'hearing' as they are entitled to under the law."

The following cases sustain the position of the Illinois Court of Appeals: *Babcock* v. *Wolf,* 70 Iowa, 676, at p. 679, 28 N. W., 490, at p. 491; *Chicago Ry. Equip-*

*ment Co.* v. *Blair,* 20 F. (2d), 10; *Juster Bros., Inc.,* v. *Christgau, Dir.,* 214 Minn., 108, at p. 120, 7 N. W. (2d), 501, at p. 508; *Anthony* v. *Gilbrath,* 396 Ill., 125, at p. 128, 71 N. E. (2d), 84, at p. 85; *People* v. *Richetti,* 302 N. Y., 290, at p. 297, 97 N. E. (2d), 908, at pp. 911-912; *Morgan* v. *United States,* 304 U. S., 1, at p. 19, 58 S. Ct., 773, 82 L. Ed., 1129, at p. 1133; *Keown* v. *Keown,* 231 Mass., 404, at p. 405, 121 N. E., 153, at p. 154.

We must assume that, when the Legislature used the word "hearing" in this statute, it had in mind the legal definition of the word and the sense in which the word is used in our jurisprudence. On that assumption, the word as used in former Section 11294, General Code (now Section 2703.16, Revised Code), embraces not only the listening to the examination of witnesses, but the entire judicial examination of the issues between the parties, both of law and of fact, and the determination of those issues.

Consequently, when the statute said "before the hearing [the party who makes the service], must make and file an affidavit," the General Assembly meant that such affidavit shall be filed before the hearing is complete. Hence, an affidavit filed before the judicial determination—that is, before the judgment entry is filed with the clerk of courts for journalization—is filed before the hearing as required by such statute.

In the consideration of the problem before this court, we have recognized that the journal entry filed September 11, 1950, was a *nunc pro tunc* entry, to take effect as of January 3, 1950, the first day of the January, 1950, term of court; whereas the affidavit of the plaintiff, Ethel Shuff, stating that the residence of the defendant, Raymond Shuff, was then unknown and could not with reasonable diligence be ascertained, was filed September 7, 1950.

Did this *nunc pro tunc* entry take effect, so far as

the time when such affidavit was required to be filed, on January 3, 1950, or September 11, 1950? We think this question is answered by the pronouncement of the Supreme Court of Ohio in the case of *Belden* v. *Stott,* 150 Ohio St., 393, 83 N. E. (2d), 58, wherein the court said:

"1. The power of a court to enter a judgment *nunc pro tunc* is available in furtherance of justice only, and such judgment is not effective as of the date to which it relates back if that would deny the right of review to any proper party. To preserve such right of review, the date upon which such judgment is actually filed will control. (Fifth paragraph of syllabus in the case of *Porter, Exr.,* v. *Lerch,* 129 Ohio St., 47, approved and followed.)

"2. A judgment entered *nunc pro tunc* may be given effect from different dates for different purposes. For some purposes, the judgment may be given effect from the actual date of its *nunc pro tunc* entry. Generally, however, a *nunc pro tunc* entry of judgment or a *nunc pro tunc* correction of the records of a judgment is given a retrospective operation as between the parties thereto."

In the judgment of this court, the affidavit herein was filed within the time contemplated by the statute then in force and effect.

We have examined all of the claimed errors, and find none prejudicial to the substantial rights of the appellant.

The judgment is affirmed.

*Judgment affirmed.*

DOYLE, P. J., and STEVENS, J., concur.