[Civ. No. 12641. First Dist., Div. Two. Sept. 5, 1944.]

ALLAN PRESCOTT KING, Appellant, v. BOARD OF MEDICAL EXAMINERS OF THE STATE OF CALIFORNIA et al., Respondents.

646

George H. Hauerken and Alden Ames for Appellant.

Robert W. Kenny, Attorney General, and Allen L. Martin, Deputy Attorney General, for Respondents.

NOURSE, P. J.—The plaintiff sued in mandamus to review an order of the Board of Medical Examiners revoking his license to practice the profession of "drugless practitioner." Following a trial in the superior court a judgment was entered affirming the order of the medical board. The trial was held during the twilight period between the decisions of our Supreme Court in *Laisne* v. *California State Board of Optometry*, 19 Cal.2d 831 [123 P.2d 457], and *Dare* v. *Board of Medical Examiners*, 21 Cal.2d 790 [136 P.2d 304], and the trial court accordingly conducted the proceeding in harmony with the rules of practice outlined in the former decision, though the judgment was entered after the Dare case was decided. This resulted in findings that the evidence did not support a finding of guilt upon the first charge or count of the accusation, that the court was unable to determine the scientific value of the evidence relative to the second count, and that, as to the third count, a technical violation was proved, but that the offense was so trivial that the order of revocation of petitioner's license was unjustified.

The first count of the accusation charged the licensee with unprofessional conduct in that he did, on a date specified "penetrate the tissues of (Mr. A. and Mrs. B.) . . . in the treatment of a certain disease, injury, deformity, and other physical and mental conditions" in violation of section 2394 of the Business and Professions Code. In the hearing before the board not a word of testimony was taken in relation to "Mrs. B," but the board found the licensee "guilty as charged." As to "Mr. A" the undisputed evidence was that no tissue was penetrated in the treatment of any disease

or condition mentioned in the statute. However the board unanimously found him ''guilty as charged'' and ordered his license to practice revoked. On this phase of the case the trial judge filed a written opinion from which we quote in part as stating our views as to the insufficiency of the evidence to support the order of revocation:

''From the uncontradicted evidence it appears that this charge is based on the action of plaintiff in making a hemoglobin test of the blood of one Riesen. He did this, according to the testimony of the special agent of the Board, at a lecture that plaintiff was giving by taking a drop of blood from the ear lobe of Riesen. For the purpose of making the test plaintiff used what the agent rather vaguely described as 'a long instrument similar to a pencil.' The plaintiff then compared the drop of blood so taken with a hemoglobin chart and thereupon told Riesen what the reading showed. No charge was made for the test. The question is thus presented whether the action of the defendant involved a penetration of the tissues within the meaning and intent of the Act. At the time that petitioner was licensed in 1938 the Act required (Section 2231) that all applicants for certificates as drugless practitioners take a course of three hundred and seventy hours in diagnosis. The statute imposed no restrictions as to the character or subject-matter of the course given in that subject. The requirement of a course in diagnosis is obviously a very reasonable one even in the case of drugless practitioners since, as the Supreme Court of this State said in the case of *People* v. *Jordan,* (172 Cal. 391, 399 [156 P. 451]) : 'Intelligent treatment may only follow correct diagnosis.'

''In my opinion the prohibition of the Code against 'Penetrating the tissues' when read with other provisions of the Act and when considered in the light of the practical construction placed upon the Act by the Board of Medical Examiners cannot be given the construction contended for by the Board. Thus it appears that in 1933 the San Francisco College of Chiropractors and Drugless Physicians, of which institution plaintiff is a graduate, was investigated at its request by a committee representing the State (Medical) Board and composed of Doctors DeLappe and Dolman. A question-

naire was submitted to the college (Ex. 2). Among the questions asked appears the following:

'Q. (a) What facilities have you for training students to make the laboratory tests of blood . . . etc?

(b) By whom is this work done?

(c) To what extent is it done by students?'

I can construe the propounding of this question as having no other purpose than to elicit information as to whether or not the school was adequately equipped for making blood tests and as to whether or not the students were given training in that subject. Moreover, I cannot believe that the implied requirement that the subject be taught could have had any other purpose than to enable the students to make such tests in connection with diagnosis of patients in the event that the students were admitted to practice. Again in examinations that were given to students there were asked such questions as 'Give method of obtaining specimens and method of confirming diagnosis of paresis.' (Ex. 5). It appears without contradiction that one test of the presence of paresis involves taking a small amount of blood from a vein of the patient and another test involves a spinal puncture.

"Other examination questions (Ex. 4) called for the description of the Dick Test and the Schick Test. It appears from uncontradicted evidence that both tests are made by intracutaneous injections. It further appears that the Dick Test is made for the purpose of determining whether or not a patient is suffering from scarlet fever and the Schick Test to determine whether a patient is suffering from diphtheria. The purpose of these questions, in my opinion, was to determine the ability of the students to make the tests referred to, not as a preliminary to the treatment of those diseases in the event the students qualified as drugless practitioners but to enable them by these methods of diagnosis to determine whether the ailment of which the patient complained came within their field of practice.

"It is also worthy of note that the section involved merely forbids the penetration of the tissues 'in the treatment of a disease . . . . or other physical or mental condition. . . .'. There is no evidence that the action of plaintiff that is complained of came within this language of the Statute.

"Without pursuing the subject further I am of the opinion

that the action of the plaintiff clearly did not come within the letter and the spirit of the law and that it necessarily follows that the first count of the complaint against him was not sustained by the evidence. (See *Fuller* v. *Board of Medical Examiners,* 14 Cal.App.2d 734, 742 [59 P.2d 171].)''

A substantial part of the evidence supporting these views was taken by the trial court but had been refused admission in the proceedings before the respondent board. The accused was there arbitrarily denied the right to make proof of the essential elements of his defense—proof of facts which would have satisfied fair and reasonable minds that he was not guilty of the misconduct charged in the accusation. The trial court having found in accordance with these facts, the conclusion was inescapable that the action of the respondent board in revoking appellant's license under those circumstances was arbitrary and capricious, and an abuse of the discretion imposed in the board under section 2372 of the Business and Professions Code.

The second count of the accusation charged unprofessional conduct under the same code section in that he did ''prescribe, use or administer drugs or what are known as medicinal preparations, to wit 'Gland' capsules, 'Min-a-rex' and 'Vitamin' capsules . . . in the treatment of a disease, deformity or other physical condition.'' On this count the ten members of the board were unanimous in their vote of ''guilty as charged.'' This was done notwithstanding the fact that no evidence was offered relative to the use or prescription of any ''gland capsules,'' and that the undisputed evidence showed that the other compounds were *not* used ''in the treatment of a disease, deformity or other physical condition'' as described in the code section. In the proceeding before the board, the burden of proof was on the respondents to show that these compounds were ''drugs or what are known as medicinal preparations.'' They offered a state chemist who testified as to his chemical analysis of the contents of the mixture and concluded with the statement that ''Min-a-rex'' was ''probably sea water or something of a similar composition.'' The undisputed evidence was that the ''Vitamin Capsules'' were food substitutes containing ''wheat germ oil,'' and were sold by the petitioner in the original sealed package under the trademark of the manufacturer without other

representation than what was printed on the label. No evidence was offered to prove that they were prescribed or used for the purposes denounced in the code.

Though there was a complete failure of proof of the charges made in this count it should be noted further that the respondents denied the petitioner the right to present evidence upon the two essential elements of his defense—that no drugs or medicines were used in the treatment of any disease or physical condition (Bus. & Prof. Code, § 2394); and that the packages sold met the requirements of the pure food laws of the United States and of this state. (Bus. & Prof. Code, §4032.) If the petitioner had been permitted to make this proof no reasonable person could have found him guilty of the charge laid in the second count, and the denial of that right was arbitrary, unreasonable, and a breach of discretion.

The third count charged a violation of section 2409 of the Business & Professions Code. It is doubtful whether it stated a cause for disciplinary action though it is in the express language of the statute. The code section reads: ''Unless a person *licensed* and authorized under this chapter or any preceding medical practice act *to use* the title 'doctor' or the letters or prefix 'Dr.,' holds a physician's and surgeon's certificate, the use of this title or these letters or prefix *without further indicating the type of certificate he holds,* constitutes unprofessional conduct within the meaning of this chapter.'' (Italics ours.) The accusation does not allege that the petitioner was ''licensed'' under any act ''to use the title 'doctor' or the letters or prefix 'Dr.'.'' The license was not offered in evidence. The accusation filed with the board alleged and the answer admitted that the appellant was issued a ''Drugless Practioner's certificate of license'' authorizing him to practice as a drugless practitioner. It does not appear either in the statute or in the record that such license authorized appellant to use the title ''doctor'' in any form. The purpose of the statute is clear. If a person is licensed under any medical practice act to use the word ''doctor'' in relation to a profession other than that of a physician or surgeon he must indicate the type of certificate he holds. The unauthorized use of the letters ''M.D.'' is covered in section 2396 of the code, but the appellant was not charged under that section. Similarly the unauthorized use of the letters ''D.O.'' and ''D.S.C.'' is regulated in sections 2397 and 2398 of the

code. But we are unable to find any provision of the code or of any "preceeding medical practice act" which authorizes any agency to license a drugless practitioner to use the word "doctor" or the prefix "Dr." and, unless such a license has been issued the section does not apply. ▉ It seems apparent that the purpose of the section was to prevent misrepresentation and fraud and that there was no intent to appropriate these titles to the exclusive use of those who held the certificate of a physician and surgeon. Thus we have doctors of law, doctors of philosophy, and many other types of "doctors" who are not licensed under any medical act and therefore not included in this section.

But assuming that the information or accusation was sufficient the evidence failed to prove that the appellant was guilty of a violation of its terms, and the trial court's conclusion that it was insufficient to support the order of revocation should have gone to the extent of holding it insufficient for all purposes.

▉ Briefly the facts are that the accused published and circulated a pamphlet which bore the inscription "Published by Allan King. D.P. Doctor of Physical Medicine, State Medical Board Licentiate No. BB 327." In some of the subsequent pages of the book the name appeared as "Doctor King." The use of the title "doctor" was general in the pamphlet which was one complete document and the express statement on the title page "indicating the type of certificate" which the accused held was a sufficient compliance with the statute.

The trial court in its conclusions of law found that the evidence was insufficient to support the order revoking appellant's license on the third count, and that the penalty of revocation was too severe because "the imposition of a penalty of the suspension of the certificate of the plaintiff for a period in excess of three months for the offense set forth in the third cause of action of said complaint filed before defendants is not warranted or sustained by the evidence." On this appeal the respondents urge that the judgment of the trial court with respect to the third count be affirmed. It would have been sounder practice under these circumstances to have found that the order of the board was an abuse of discretion in this respect, as the appellant has contended throughout. ▉ The general rule is that an abuse of dis-

cretion occurs when, in proceedings before the agency, the accused is denied the right to present his defense and an order of revocation is made upon insufficient or no evidence. Here there is no proof that the accused violated the code section. To the contrary the evidence was that he did not come within its limitations.

■ It is equally clear that an abuse of discretion occurs when it appears from an examination of all the evidence that the penalty inflicted was the result of an arbitrary prejudice against the accused denying him a fair and impartial hearing. However, the court is without power to fix the penalty. Section 2372 of the code provides: "The board shall discipline the holder of any certificate, whose default has been entered or who has been heard by the board and found guilty, by any of the following methods:

(a) Suspending judgment.
(b) Placing him upon probation.
(c) Suspending his right to practice for a period not exceeding one year.
(d) Revoking his certificate.
(e) Taking such other action in relation to disciplining him as the board in its discretion may deem proper."

By the terms of this section all disciplinary action is lodged with the respondent board and the court is without power to substitute its discretion for that of the board in the matter of the form of discipline to be imposed. (*Bank of Italy* v. *Johnson*, 200 Cal. 1, 34 [251 P. 784]; *Bila* v. *Young*, 20 Cal. 2d 865, 870 [129 P.2d 364]; *Berkeley High School Dist.* v. *Coit*, 7 Cal.2d 132, 137 [59 P.2d 992]; *Drummey* v. *State Board of Funeral Directors*, 13 Cal.2d 75, 83 [87 P.2d 848]; 16 Cal.Jur. 809; 34 Am.Jur. 856.) ■ But when discretion to act under certain contingencies is conferred upon an administrative agency, the party aggrieved by the action may attack the order complained of by a proceeding in mandamus, and when it appears in such proceeding that the action taken was arbitrary, capricious, or an abuse of such discretion the order will be vacated. (See *Hogan* v. *Retirement Board*, 13 Cal.App.2d 676 [57 P.2d 520]; 16 Cal.Jur. 861; *Drummey* v. *State Board of Funeral Directors, supra;* 34 Am.Jur. 858.)

Here the complaint alleged that the agency acted arbitrarily and capriciously in refusing to permit the petitioner

to introduce material and competent evidence and in other respects prevented the petitioner from having a fair and impartial trial. These allegations were proved beyond a reasonable doubt, but no finding or conclusion of law was made covering them. This was the real issue tendered to the trial court because, when mandamus is employed to examine into a disciplinary order of this character, the basis of the proceeding is to compel "the admission of a party to the use and enjoyment of a right or office to which he is entitled. . . ." Section 1085, Code of Civil Procedure; *Dare* v. *Board of Medical Examiners, supra,* at p. 796. Many cases have been written on the subject of the right to "review" by mandamus the decisions of administrative agencies. These are cited in the Dare case and need not be added here. In creating the writ of mandamus as the legal remedy in the place of the review by certiorari it was necessary to establish and recognize these primary principles—that the proceedings before the administrative agency were neither judicial nor quasi-judicial, and that the remedy by mandamus is limited to the provisions of section 1084 to 1097 of the Code of Civil Procedure as pointed out in the Dare case.

 Since the proceedings before the agency are non-judicial its discretion is that conferred upon it by law and it can go no further. And since the court will not control this discretion if fairly and honestly exercised it is incumbent upon the petitioner to both allege and prove that the act complained of was an excess of jurisdiction, arbitrary, capricious, fraudulent, or an abuse of discretion, or that it was a breach of duty, or one taken without due regard to the "right" of the petitioner. (*Brown* v. *Board of Police Commrs.,* 58 Cal. App.2d 473, 480 [136 P.2d 617]; *Dierssen* v. *Civil Service Com.,* 43 Cal.App.2d 53 [110 P.2d 513].) The several authorities cited in the above cases rely upon one or more of the alternatives mentioned, but the gist of the rule is that the area covered by the proceeding is within the scope of section 1085 of the Code of Civil Procedure and that the general issue to be determined is whether the petitioner has been unlawfully and unfairly denied a "right" to which he is entitled under the law. When upon such proceeding in mandamus a trial de novo as defined in the Dare case has been conducted and the trial court determines that the proceed-

ings before the agency were fair and impartial and that the order complained of was not vulnerable upon any of the grounds pleaded the judgment of the trial court should be an affirmance of the order. Otherwise the order should be annulled or vacated so that the judgment may "compel the admission of (the) party to the use and enjoyment of (the) right or office to which he is entitled. . . ." (Code of Civ. Proc., § 1085.)

Here the proof is clear and uncontroverted that petitioner's trial before the board was arbitrary and unfair, and that the penalty of forfeiture of his license to practice his profession was so far beyond any exercise of discretion that the trial court should have concluded that these allegations of the complaint were true, and entered its judgment accordingly.

The judgment is reversed.

Sturtevant, J., concurred.

A petition for a rehearing was denied October 2, 1944, and the opinion was modified to read as above.