35 Cal.2d 242 (1950)
WILLIAM LeGRANDE COOPER, Appellant,
v.
STATE BOARD OF MEDICAL EXAMINERS et al., Respondents.
Supreme Court of California. 
Apr. 28, 1950.
 Walter N. Anderson, French & Indovina, F. Walter French and Frank J. Indovina for Appellant.
 Fred N. Howser, Attorney General, and J. Albert Hutchinson, Deputy Attorney General, for Respondents.
 SCHAUER, J.
 The superior court, pursuant to an alternative writ of mandate issued upon the petition of William LeGrande Cooper (hereinafter called petitioner), reviewed disciplinary proceedings theretofore had before respondent Board of Medical Examiners (hereinafter termed the board) and rendered judgment upholding the findings and conclusions of the board as well as its order revoking petitioner's license as a drugless practitioner (see State Medical Practice Act, Bus. & Prof. Code, div. 2, ch. 5). Petitioner has appealed, and as ground for reversal contends that certain acts performed by him (which formed the basis of two counts of the accusation filed against him before the board), upon which the order of revocation was based, did not constitute unprofessional conduct within the meaning of the Medical Practice Act (see Bus. & Prof. Code, 2360, 2361, 2378). He also *244 relies upon various asserted procedural irregularities in the proceedings before the board, and in addition urges that the penalty of license revocation was so disproportionate to the violations involved as to amount to an abuse of discretion on the part of the board (see Code Civ. Proc., 1094.5, subds. (b) and (c)). We have concluded that petitioner's conviction of unprofessional conduct cannot be sustained as to one of the two counts upon which the revocation order was based, and that the judgment should be reversed and the matter remanded to the board for reconsideration of the penalty on the other count.
 Petitioner does not deny that he performed the acts which the board and the superior court held to constitute unprofessional conduct. They were: (count 7) the use of the prefix "Dr.," with certain descriptive language, while holding licenses as a drugless practitioner and as a clinical laboratory technologist, and (count 9) the penetration of tissue incidental to the giving of a blood transfusion at the direction of a qualified physician as well as the recommendation and delivery of aspirin to the patient and the suggested use of massage and liniment by him following the transfusion. [fn. 1] The superior court, after a hearing but with no other evidence than the transcript and record of the proceedings before the board, found and concluded that the "findings and order of respondent Board revoking petitioner's license as a drugless practitioner were ... supported by the findings of respondent Board; that the findings of respondent Board were, and are, based upon and supported by the weight of the evidence," and that the proceedings before the board were within its jurisdiction and were conducted "without procedural or prejudicial error or abuse of discretion of any kind." Judgment was rendered denying the peremptory writ of mandate and recalling the alternative writ theretofore issued.
 Petitioner first contends that the trial court erred in not holding that as to count seven the board committed an abuse of discretion (see Code Civ. Proc., 1094.5) in that it violated the provision of section 11517(a) of the Government Code to the effect that "Where a contested case is heard before an agency itself, no member thereof who did not hear the evidence shall vote on the decision." The accusation against petitioner as originally filed with the board contained eight *245 counts, on which the board held a hearing and took evidence in August, 1947. The hearing was then continued, without a decision, to March, 1948. Meanwhile five of the ten members of the board (Bus. & Prof. Code, 2100) were replaced with five new members. In February, 1948, count nine was filed as an amendment to the accusation and petitioner filed his demurrer and answer to the new count; and in March, 1948, a hearing was held by the board and evidence taken on the new count. Three days later the board rendered its decision holding petitioner guilty of unprofessional conduct as charged in counts seven and nine. The other counts were dismissed and, therefore, cannot be relied upon to support the order or judgment.
 An affirmative vote of seven members of the board is required for license revocation (Bus. & Prof. Code, 2119, see, also, 2376.5). Administrative procedure provisions of the Government Code apply to disciplinary proceedings before the board (Bus. Prof. Code, 2360, 2364; Gov. Code, 11500, 11501(b)).
 [1] In Hohreiter v. Garrison (1947), 81 Cal.App.2d 384, 399-401 [184 P.2d 323], it was commented that "Due process requires a fair trial before an impartial tribunal and that requires that the person or body who decides the case must know the evidence, but due process is not interested in mere technical formalism. It is the substance that is determinative of whether due process has been afforded ... The Supreme Court stated [in Morgan v. United States, 298 U.S. 468, 480 (56 S.Ct. 906, 80 L.Ed. 1288)] ... 'The officer who makes the determinations must consider and appraise the evidence which justifies them ... The "hearing" is the hearing of evidence and argument. If the one who determines the facts which underlie the order has not considered evidence or argument, it is manifest that the hearing has not been given.' " In that case it was held that an insurance agent whose license was revoked had not been denied due process by reason of the fact that under the permissive provisions of subdivision (b) of section 11517 [fn. 2] of the Government Code the Insurance Commissioner *246 adopted the findings and proposed decision of a hearing officer, without reading or hearing the evidence produced before that officer. (See, also, California Shipbuilding Corp. v. Industrial Acc. Com. (1946), 27 Cal.2d 536, 544 [165 P.2d 669].) We conclude here that participation in a decision by a board member who has read and considered the evidence, or a transcript thereof, even though he was not physically present when the evidence was produced, does not violate the requirements of due process.
 [2] We are of the view that the Legislature did not, by the provision of subsection (a) of section 11517 of the Government Code, relied upon by petitioner, intend to require auditory perception of all the evidence by each board member who votes. A contested case may be heard either before a hearing officer alone or before the agency and a hearing officer (Gov. Code, 11512(a)). If the hearing is held before a hearing officer alone, the agency may adopt the officer's "proposed decision in its entirety, or may reduce the proposed penalty and adopt the balance of the proposed decision" (Gov. Code, 11517(b)), without reading the record (Hohreiter v. Garrison (1947), supra, 81 Cal.App.2d 384, 397); or may adopt a different decision "upon the record, including the transcript, with or without taking additional evidence" (Gov. Code, 11517(c)). It thus seems that the Legislature simply intends that an agency member who exercises his own independent judgment on the case, as distinguished from adopting a hearing officer's decision either in its entirety or with a reduced penalty, must be acquainted with the record but need not be physically present when the evidence is produced. Such a holding also appears to comport with the purpose of the Judicial Council of California (see Tenth Biennial Report, p. 24) whose "tentative proposals [for the Administrative Procedure Act] were designed to require actual familiarity with the case on the part of the person having the power to decide ..."
 [3] Moreover, as in the Hohreiter case, petitioner's contentions that as to count seven both due process and legislative intention were violated, are further met by the fact that the trial court here was "authorized by law to exercise its independent judgment on the evidence." (Moran v. Board of Medical Examiners (1948), 32 Cal.2d 301, 308 [196 P.2d 20], and cases there cited.) That court did exercise its judgment upon the evidence and has made its decision, and petitioner has thus been accorded a full and fair judicial hearing which *247 he does not even suggest did not comply with all requirements of due process. Arguments made by petitioner as to other claimed procedural irregularities before the board are likewise answered by the fact that he received a full hearing in the superior court.
 Petitioner makes no contention that the evidence does not support the findings of fact made by the board, which were in effect adopted by the trial court also, but does urge that such findings do not as to either count seven or count nine support the conclusion of law that petitioner violated the statutory provisions cited by the board in its decision and order revoking petitioner's license.
 From the findings it appears that at the time of the acts performed by petitioner, upon which the order of revocation is based, he was licensed both as a clinical laboratory technologist under the provisions of chapter 3, division 2, of the Business and Professions Code, and as a drugless practitioner under the provisions of article 7, chapter 5, division 2, of the same code. (Unless otherwise stated, section numbers mentioned hereinafter will refer to the Business and Professions Code.) For "some years prior to the filing of the Accusation" before the board, petitioner and one King "maintained their offices and laboratories in the same premises" in Los Angeles; King "maintained his office as a physician and surgeon and X-ray laboratory in a portion of said premises" and petitioner "maintained his offices and clinical laboratory in another portion of said premises." A "common receptionist was used" by petitioner and King. "[U]pon the exterior portion of the street entrance to said premises [petitioner] ... maintained a sign reading as follows: 'Dr. Wm. L. Cooper Clinical Pathology.' " Also "for some considerable time prior to the filing of the accusation" petitioner and King "caused to be ... distributed to other clinical laboratories, hospitals and to licentiates in the healing arts a form of order for work to be done or performed ... [which] contained in the heading thereof the following designations ..."
 "Dr. C. V. King Dr. Wm. L. Cooper"
 X-Ray-Radium Clinical Pathology""
 It was held (count seven) that petitioner's use of the prefix "Dr." preceding his name on the doorway constituted a violation of section 2142, [fn. 3] and that his use of the same prefix on *248 the order form and price list constituted a violation of section 2141. [fn. 4]
 [4] It will be noted that the declarations of both sections 2141 and 2142 that commission of the acts therein specified will constitute a misdemeanor apply only to those who do not "at the time of so doing" hold "a valid, unrevoked certificate as provided in this chapter," and who are not ( 2142) "entitled to practice hereunder." Since petitioner did hold such a certificate as a drugless practitioner, issued under the provisions of the chapter referred to (Bus. & Prof. Code, div. 2, ch. 5) and was a practitioner and entitled to practice thereunder, it appears that the acts done by him, as set forth hereinabove in relation to count seven, did not constitute a violation of either section 2141 or 2142, and that the board and the trial court erred in holding to the contrary.
 It is noted that count seven of the accusation as filed with the board also charged that petitioner had violated section 2409. [fn. 5] The evidence shows that petitioner's use of the prefix "Dr." preceding his name was followed by the words "Clinical Pathology." Whether such descriptive words sufficiently meet the requirements of the statute as "indicating the type of certificate he holds" we need not now determine because it appears that in any event the board did not hold him guilty of violating that section ( 2409; cf., King v. Board of Medical Examiners (1944), 65 Cal.App.2d 644, 651 [151 P.2d 282]) and its order, of course, cannot be supported in this proceeding on a theory that the evidence would support a finding that *249 petitioner violated some section which the board did not find to have been violated.
 The facts forming the basis of count nine are as follows: One Dr. Couturier, a licensed osteopathic physician and surgeon, decided to treat one of his patients, named Toros, who was suffering from "a condition of eyeritis," by "blood transfusions for the purpose of eliminating a latent infection," and requested petitioner to perform the transfusions. Toros requested that the transfusions take place on a Friday afternoon or a weekend. On August 11, 1944, and again on August 25, 1944, petitioner, at Dr. Couturier's request, administered a transfusion to Toros at the latter's residence in Los Angeles. At the time of the second transfusion Dr. Couturier was at his residence at Lake Arrowhead, some 100 miles from Los Angeles. Shortly after the second transfusion the patient "complained of suffering pains in his back and ... legs," and petitioner thereupon directed the patient's wife to "procure some liniment and apply the same by massaging the legs of" the patient. Toros became worse and petitioner then delivered "six capsules" of aspirin to the wife "with directions as to how to administer the same."
 It was held that the above acts by petitioner "constituted the practicing of a system or mode of treating the sick or afflicted by treating and prescribing for an ailment, disease or disorder for which ... [petitioner] was not licensed as provided in Section 2141," already quoted herein, and rendered petitioner "guilty of unprofessional conduct as provided" in section 2378. [fn. 6]
 [5] Sections 2137 and 2138 define the scope of treatment which may be administered by a physician and surgeon and by a drugless practitioner, respectively, and section 2394 [fn. 7] *250 specifies that "The use of drugs or what are known as medicinal preparations ... or the severing or penetrating of the tissues of any human being by the holder of a drugless practitioner's certificate in the treatment of any disease ... constitutes unprofessional conduct" by such drugless practitioner. Inasmuch as the performing of a blood transfusion clearly involves the "penetrating ... of the tissues of human beings," it appears that the administration of such transfusion by petitioner did constitute the practicing of a system of treating the sick or afflicted which petitioner's drugless practitioner's license did not authorize. (See People v. Nunn (1944), 65 Cal.App.2d 188, 194-195 [150 P.2d 476].)
 [6] Petitioner urges that he was not treating Toros as his own patient, but was merely performing, under the direction of a licensed physician and surgeon, a "routine procedure" authorized by his certificate as a clinical technologist. We are satisfied that this argument lacks merit. The definition of "clinical laboratory technologist," contained in sections 1203 and 1205, [fn. 8] discloses that the acts performed by petitioner upon Toros were beyond the scope of his license as a technologist (see, also, sections 1240, 1288 [fn. 9]) and no claim is made *251 that he was proceeding under the provisions of section 2144 to the effect that "Nothing in this chapter prohibits service in the case of emergency ..."
 [7] Petitioner also attempts to compare the giving of a blood transfusion to the piercing of tissue to withdraw blood as specimen for a test (see King v. Board of Medical Examiners (1944), supra, 65 Cal.App.2d 644). Although it would appear from the King case and from sections 1203 and 1205 that either a drugless practitioner or a technologist may lawfully withdraw blood for such a purpose, we are persuaded that the record here supports the conclusion that the blood transfusions were administered in the course of treatment of disease rather than in the "obtaining [of] scientific data which may be used as an aid to ascertain the presence, progress and source of disease" ( 1205) and were not within the activities permitted to petitioner by the applicable statutes.
 It may further be noted that we have not discovered in the 850-page transcript herein, nor has either party pointed out any testimony, or cited any law (other than the code sections discussed hereinabove), to the effect that a technologist is or is not authorized to or customarily does or does not administer blood transfusions, either independently or under the supervision of a licensed physician or surgeon.
 It is urged by the state that, independently of any other acts, unprofessional conduct is established by the evidence showing that petitioner recommended a massage with liniment and, in accordance with the previous instructions of Dr. Couturier, delivered the six aspirin capsules to the patient; countering, on behalf of petitioner, it is argued that no license is needed or is violated by such simple acts. We conclude that since the recommendation of the massage and liniment and the delivery of the aspirin were related to and formed a part of the treatment of the patient in connection with the giving of the blood transfusions, and since the administering of a blood transfusion clearly was beyond the scope of any license held by petitioner and was an unlawful act, it is unnecessary to consider whether the finding of unprofessional conduct would have been supported by the evidence as to the liniment and massage and aspirin standing alone.
 [8] Petitioner's final contention is that the penalty of revocation of license is so disproportionate to the offenses held to have been committed by him, as to amount to an abuse of discretion on the part of the board. Section 1094.5 of the *252 Code of Civil Procedure provides, so far as here material, that the court's inquiry into the proceedings before the board "shall extend to the questions whether ... there was any prejudicial abuse of discretion ... [which] is established if ... the order or decision is not supported by the findings ..."
 "(e) The court shall enter judgment either commanding respondent [board] to set aside the order or decision, or denying the writ. Where the judgment commands that the order or decision be set aside, it may order the reconsideration of the case in the light of the court's opinion and judgment and may order respondent to take such further action as is specially enjoined upon it by law but the judgment shall not limit or control in any way the discretion legally vested in the respondent."
 The board made a single order of license revocation based on its findings and conclusions that both count seven and count nine had been violated. Inasmuch as we hold that the findings do not support the conclusion of unprofessional conduct as to count seven, and since license revocation is in any event a drastic penalty, and, furthermore, in consideration of the fact that we have no means of knowing whether the board itself would have imposed so severe a penalty for violation of count nine alone, we are of the view that the judgment should be reversed with directions to the trial court to set aside the order and send the matter back to the board for reconsideration of the penalty. (See Bus. & Prof. Code, 2372 [fn. 10]; King v. Board of Medical Examiners (1944), supra, 65 Cal.App.2d 644, 652; see, also, Fuller v. Board of Medical Examiners (1936), 14 Cal.App.2d 734, 737 [59 P.2d 171].)
 The judgment is reversed and the trial court is directed to enter judgment commanding respondent board to set aside its order of revocation and further directing the board to reconsider the case and redetermine its order in the light of this court's opinion and judgment.
 Gibson, C.J., Shenk, J., Traynor, J., and Spence, J., concurred.
 EDMONDS, J.
 I cannot agree that the decision of the superior court upon the record of the hearing held by the Board of Medical Examiners excused the failure of the administrative *253 body to comply with the statute. Section 11517(a) of the Government Code provides: "Where a contested case is heard before an agency itself, no member thereof who did not hear the evidence shall vote on the decision." In the present case, five members of the board did not "hear the evidence." A majority of the court have held that the word "hear" is not to be given its usual or common meaning, which is, "To apprehend by means of the ear. ..." (Funk & Wagnalls New Standard Dictionary, p. 1129.) As now defined, "to hear" means to have "actual familiarity with the case on the part of the person having the power to decide. ..."
 Despite the statement of the majority, such a holding is not in accordance with the purpose of the Judicial Council of California as stated in its tenth biennial report commenting upon its proposed statute which subsequently became section 11517. The recommendation of the council was that the decision of an administrative agency, "in every case," should be made "by someone familiar with the proceedings and before whom an opportunity to argue the case is afforded. ..." (P. 24.) (Emphasis added.) Certainly the new procedure enacted in 1945 does not sanction a procedure whereby one-half of the board acts as a hearing officer and the other members reach a decision upon a record of the testimony taken by the "hearing group."
 Moreover, the constitutional right to be "heard by counsel" has been held to mean the effective right to presentation of the case by counsel addressing auditory faculties of a jury. (Messer v. State, 120 Fla. 95 [162 So. 146].) The word "hearing" is stated to mean "the listening to the arguments of counsel on both sides if oral arguments are made. ..." (West Chicago Park Commissioners v. Riddle, 151 Ill.App. 487.) To hear does not mean to read.
 It cannot be said that the failure of the board to comply with section 11517 of the Government Code did not prejudice the rights of the petitioner. Had the members of the board who were not present at the hearing listened to Dr. Cooper's testimony and the evidence adduced in his behalf, they might have evaluated it quite differently than they did upon reading *254 the record. Section 1094.5 of the Code of Civil Procedure provides that failure of the administrative board to proceed "in the manner required by law" is a ground for commanding the board to set aside its order or decision. Action in excess of jurisdiction, lack of a fair trial, and insufficient evidence to support the findings are separate grounds for setting aside the board's order. The fact that the superior court exercised its "independent judgment on the evidence" does not rectify the board's failure to proceed "in the manner required by law."
 It seems clear that the Legislature, in fixing the requirements for a hearing and decision by the Board of Medical Examiners and other administrative agencies enumerated in section 11501 of the Government Code, laid down a more strict rule than it has adopted in connection with a hearing before the Industrial Accident Commission. (Lab. Code, 115.) The clear statement of section 11517(a) that "no member thereof who did not hear the evidence shall vote on the decision" makes certain that it was the intention of the Legislature to limit participation in a decision of the Board of Medical Examiners accordingly.
 For these reasons, I would reverse the judgment and direct the trial court to issue a writ of mandate commanding the respondent board to set aside its order of revocation and to hear and consider, in accordance with the statutory requirements, all evidence pertinent to the issues presented by the charges against Dr. Cooper.
 CARTER, J.
 I dissent.
 The majority opinion holds that members of an administrative board may join to make the necessary quorum in deciding a case before it although they were not present at the hearing and thus did not hear the witnesses testify. It is reasoned that such is not necessary for due process if the absent members read the evidence and that the statute does not require it; that "to hear" means only to examine the evidence. I do not question the due process holding, but the statute here by express terms requires the deciding board members to receive the evidence from the witnesses by their auditory and visual faculties.
 It should first be noted that this is not a case where a hearing officer made findings and a decision, which were adopted by the board. There was a hearing officer present to conduct the *255 hearing, but the board itself made the decision on its own without any recommendation by the hearing officer. There are several situations presented. (1) If a contested case is heard by the hearing officer alone, he may make a decision and the board may adopt it. (Gov. Code, 11517(b).) That is not this case. (2) If his decision is not adopted the "agency itself may decide the case upon the record," (Id., 11517(c)), with or without taking additional evidence. That was not done here but it is to be noted that even in such circumstances, where "additional oral evidence is introduced before the agency itself no agency member may vote unless he heard the additional oral evidence." (Id., 11517(c).) [Emphasis added.] The third situation is the one we have here, and the statute expressly states when the case is heard before the agency itself, that is, not before a hearing officer alone, the officer must assist and advise, but he need not make a decision, and in such case "no member who did not hear the evidence shall vote on the decision." (Id., 11517(a).) If he must hear the evidence, it is surely not enough that he merely read it after it has been given. Every definition of "hear" embraces the thought of "to perceive by the ear." (Webster's Int. Dict. (2d ed.), p. 1150.) Perceiving by the ear is not receiving a communication by the eye. The other provisions of the administrative procedural law are in full accord with that conclusion. When the "word 'agency' alone is used the power to act may be delegated by the agency and wherever the words 'agency itself' are used the power to act shall not be delegated. ..." (Id., 11500.) [Emphasis added.] In the instant case, words "agency itself" are used. Thus there can be no delegation which in effect there would be if some of the board members could listen to the evidence for the others. And, keeping in mind the meaning of "agency itself," it is provided: "When the agency itself hears the case the hearing officer shall preside at the hearing, rule on the admission and exclusion of evidence, and advise the agency on matters of law; the agency itself shall exercise all other powers relating to the conduct of the hearing but may delegate any or all of them to the hearing officer ..." (Id., 11512(b).) [Emphasis added.] Thus, when the power is not delegated to a hearing officer, the board must exercise all powers in conducting the hearing. Hence it must itself exercise the power of receiving personally the evidence, and it must be a quorum that does that. Here there was no quorum of the same members who *256 were personally present at the hearing and received the evidence. Further, in regard to rehearings: "If oral evidence is introduced before the agency itself, no agency member may vote unless he heard the evidence." (Id., 11521(b).) [Emphasis added.]
 It is no answer to suggest, as does the majority opinion, that, inasmuch as petitioner had a hearing in the trial court, he is not injured, for he was entitled to a determination by the board which had initial jurisdiction. If they had seen and heard the witnesses, they might have imposed a lesser penalty than license revocation.
 I cannot agree that the giving of the transfusions was a violation of the law. Petitioner had nothing to do with the diagnosis, medical instruction or treatment of the patient. All that was done by a licensed physician and surgeon, who requested that petitioner perform the mere mechanical act involved in a transfusion. Petitioner was only carrying out the medical orders of a licensed physician. It will be noted that the statute (Bus. & Prof. Code, 2138, 2394) says that a drugless practitioner may not in treating patients penetrate the tissue. As we have seen, petitioner was not treating the patient. The licensed physician was doing that. Under these circumstances, the principles enunciated in Chalmers-Francis v. Nelson, 6 Cal.2d 402 [57 P.2d 1312], where a nurse administered the anesthetic to a patient undergoing an operation, are appropriate. The court said: "The findings, which are amply supported by the testimony in this case, show conclusively that everything which was done by the nurse, Dagmar A. Nelson, in the present instance, and by nurses generally, in the administration of anesthetics, was, and is done under the immediate direction and supervision of the operating surgeon and his assistants. Such method seems to be the uniform practice in operating rooms. There was much testimony as to the recognized practice of permitting nurses to administer anesthetics and hypodermics. One of plaintiffs' witnesses testified to what seems to be the established and uniformly accepted practice and procedure followed by surgeons and nurses, and that is that it is not diagnosing or prescribing by nurses within the meaning of the Medical Practice Act. We are led further to accept this practice and procedure as established when we consider the evidence of the many surgeons who supported the contention of the defendant nurse, and whose qualifications to testify concerning the practice of medicine in this community and elsewhere were established *257 beyond dispute. That such practice is in accord with the generally accepted rule is borne out by the decided cases. (Frank v. South, 175 Ky. 416 [194 S.W. 375, Ann.Cas. 1918E 682]; Underwood v. Scott, 43 Kan. 714 [23 P. 942].) While these two cases construe provisions of statute law specifically relating to the practice and duties of registered nurses, they are in agreement with the definitely established rule relating to the subject. (Frank v. South, supra; In re Carpenter's Estate, 196 Mich. 561 [162 N.W. 963].)"
 "Aside from the proposition that nurses in the surgery during the preparation for and progress of an operation are not diagnosing or prescribing within the meaning of the Medical Practice Act, it is the legally established rule that they are but carrying out the orders of the physicians to whose authority they are subject. The surgeon has the power, and therefore the duty, to direct the nurse and her actions during the operation." [Emphasis added.]
 Practicality and common sense must be employed when these statutes are interpreted. Many common practices may be noted which, while technically a violation of the Medical Practice Act, are not so considered. Take, for example, the case of the playground supervisor, or school teacher, who renders first aid to her charges, such as the removal of a splinter which calls for a penetration of tissue; the manicurist who cuts fingernails (tissue); the barber who cuts hair (tissue); the nurse, or even a mere office attendant employed by a doctor who gives hypodermic injections for the prevention of various diseases, or in treatment of different ills, diseases or conditions, where the doctor is not in the same room, or even in the immediate vicinity. While all of the above mentioned acts are technical violations of the Medical Practice Act, reason and common sense tell us that the Legislature in adopting the Medical Practice Act did not intend that any of these acts should constitute a crime.
 It would seem to me that the doctor who gives the orders to a person in the category of appellant is equally guilty, if appellant is guilty, of unprofessional conduct. He, too, must be cognizant of the limitations of the license held by such a drugless practitioner or laboratory technician. Nurses and laboratory technicians are taught to give hypodermics, and the intricacies of giving transfusions, and yet, under the holding of this case, are guilty of unprofessional conduct if they *258 carry out orders of a licensed physician in so doing. It is a physical impossibility for a doctor performing an operation to give a transfusion at the same time to a patient who needs it; it is equally impossible for a doctor to see and give "shots" to every patient who comes to his office for that type of treatment--it is necessary for him to delegate some of his duties to technicians trained to do just that sort of thing. Are we to hold all these trained persons guilty of unprofessional conduct and do nothing about the one who gives the orders, or, are we likewise to hold the physicians who employ them guilty of unprofessional conduct for aiding and abetting an unlicensed person? These technicians earn their livelihood by carrying out the orders of their superiors in the medical field. But because the majority of this court considers that appellant was himself treating the patient when he was only doing what he was told to do by one qualified to tell him to do it, he is guilty of unprofessional conduct and may have his license revoked without a hearing that satisfies the most meager requirements of due process of law. I cannot agree that we are required to place such an unreasonable construction upon the provisions of the Medical Practice Act, or that the State Board of Medical Examiners would have done so had they considered the implications which must flow therefrom.
 I would, therefore, reverse the judgment with direction to the trial court to grant the writ of mandate prayed for by petitioner.
 Section 2138: "The drugless practitioner's certificate authorizes the holder to treat diseases, injuries, deformities, or other physical or mental conditions without the use of drugs or what are known as medical preparations and without in any manner severing or penetrating any of the tissues of human beings except the severing of the umbilical cord."
 Section 2394: "The use of drugs or what are known as medicinal preparations by the holder of a drugless practitioner's certificate in or upon any human being or the severing or penetrating of the tissues of any human being by the holder of a drugless practitioner's certificate in the treatment of any disease, injury, or deformity, or other physical or mental condition of the human being, except the severing of the umbilical cord, constitutes unprofessional conduct within the meaning of this chapter."
 Section 1205 (before 1949 amendment): "As used in this chapter, 'clinical laboratory' means any place, establishment or institution organized and operated for the practical application of one or more of the fundamental sciences by the use of specialized apparatus, equipment and methods for the purpose of obtaining scientific data which may be used as an aid to ascertain the presence, progress and source of disease." In 1949 the following sentence was added to section 1205: "A duly licensed clinical laboratory technologist or clinical laboratory technician may perform venipuncture or skin puncture for test purposes, upon specific authorization from any person licensed under any provisions of law relating to healing arts."
 Section 1288: "It is lawful for any person conducting or operating a clinical laboratory to accept assignments for tests from any person licensed under any provision of law relating to the healing arts."
 "(a) Suspending judgment."
 "(b) Placing him upon probation."
 "(c) Suspending his right to practice for a period not exceeding one year."
 "(d) Revoking his certificate."
 "(e) Taking such other action in relation to disciplining him as the board in its discretion may deem proper."
NOTES
[fn. 1] 1. Other counts of the accusation against petitioner were dismissed by the board.
[fn. 2] 2. That subdivision provides as follows: "If a contested case is heard by a hearing officer alone, he shall prepare a proposed decision in such form that it may be adopted as the decision in the case. A copy of the proposed decision shall be filed by the agency as a public record. The agency itself may adopt the proposed decision in its entirety, or may reduce the proposed penalty and adopt the balance of the proposed decision."
[fn. 3] 3. Section 2142 reads as follows: "Any person, who uses in any sign or in an advertisement the word 'doctor,' the letters or prefix 'Dr.,' the letters 'M.D.,' or any other term or letters indicating or implying that he is a physician and surgeon, physician, surgeon or practitioner under the terms of this or any other law, or that he is entitled to practice hereunder, or under any other law, without having at the time of so doing a valid, unrevoked certificate as provided in this chapter, is guilty of a misdemeanor."
[fn. 4] 4. Section 2141 reads as follows: "Any person, who practices or attempts to practice, or who advertises or holds himself out as practicing, any system or mode of treating the sick or afflicted in this State, or who diagnoses, treats, operates for, or prescribes for any ailment, blemish, deformity, disease, disfigurement, disorder, injury, or other mental or physical condition of any person, without having at the time of so doing a valid, unrevoked certificate as provided in this chapter, is guilty of a misdemeanor."
[fn. 5] 5. Section 2409 reads as follows: "Unless a person licensed and authorized under this chapter or any preceding medical practice act to use the title 'doctor' or the letters or prefix 'Dr.,' holds a physician's and surgeon's certificate, the use of this title or these letters or prefix without further indicating the type of certificate he holds, constitutes unprofessional conduct within the meaning of this chapter."
[fn. 6] 6. Section 2378 reads as follows: "The violating or attempting to violate, directly or indirectly, or assisting in or abetting the violation of or conspiring to violate any provision or term of this chapter constitutes unprofessional conduct within the meaning of this chapter."
[fn. 7] 7. Those sections read as follows: Section 2137: "The physician's and surgeon's certificate authorizes the holder to use drugs or what are known as medical preparations in or upon human beings and to sever or penetrate the tissues of human beings and to use any and all other methods in the treatment of diseases, injuries, deformities, or other physical or mental conditions."
[fn. 8] 8. Those sections read as follows: Section 1203: "As used in this chapter, 'clinical laboratory technologist' means any person who engages in the work and direction of a clinical laboratory."
[fn. 9] 9. Those sections read as follow: Section 1240: "This chapter [on Clinical Laboratory Technology] does not authorize any person to practice medicine and surgery or to furnish the services of physicians for the practice of medicine and surgery. This chapter does not repeal or in any manner affect any provision of this code relating to the practice of medicine."
[fn. 10] 10. That section reads as follows: "the board shall discipline the holder of any certificate, whose default has been entered or who has been heard by the board and found guilty, by any of the following methods: