[Civ. No. 17488. Second Dist., Div. Three. Dec. 18, 1950.]

ROBERT L. BRENNAN, Appellant, v. STATE BOARD OF MEDICAL EXAMINERS, etc., et al., Respondents.

Walter N. Anderson and Robert P. Dockeray for Appellant.

Fred N. Howser, Attorney General, Bayard Rhone and Gilbert Harelson, Deputies Attorney General, for Respondents.

SHINN, P. J.—Proceeding in mandamus to compel respondents, State Board of Medical Examiners and its mem-

bers, to cancel the order of the board revoking petitioner's license to practice as a chiropodist and placing him on probation for a five-year period, during which time the revocation of his license was to be suspended. The petition was filed in the superior court; an alternative writ was issued. The respondents filed an answer and the cause was set down for trial. Upon the trial, judgment was entered denying the peremptory writ. Petitioner appeals from that judgment.

Appellant, Dr. Robert L. Brennan, a licensed chiropodist, was accused by the State Board of Medical Examiners and found guilty, as charged, of unprofessional conduct in that he had violated the provisions of sections 2139 and 2378 of the Business and Professions Code.

Section 2139, Business and Professions Code, reads as follows: ''The certificate to practice Chiropody authorizes the holder to practice Chiropody. As used in this chapter: Chiropody means the diagnosis, medical, surgical, mechanical, manipulative, and electrical treatment of the human foot, including the nonsurgical treatment of the muscles and tendons of the leg governing the functions of the foot. No Chiropodist shall do any amputation or use an anesthetic other than local.'' Section 2378 provides that unprofessional conduct is that which violates or attempts to violate directly or indirectly any provision of chapter 5, division 2, of the Business and Professions Code.

The only question presented on this appeal is whether there is evidence to sustain the finding of the trial court that the conduct of Dr. Brennan transgressed the limited certificate issued to him as a licensed chiropodist and constituted unprofessional conduct within the meaning of the section. The trial court found that the oral treatment prescribed by appellant and the hypodermic injection administered by him was ''not . . . for the treatment of the human foot nor the treatment of the muscles or the tendons of the leg governing the functions of the foot, as provided in section 2139 of the Business and Professions Code.'' It is our opinion that the record is devoid of evidence to support this finding.

The transcript of the proceedings before the Board of Medical Examiners, which was placed in evidence, shows that one Mrs. C. E. Tuttle, a woman 50 years of age, first visited appellant's office on January 19, 1948, and complained to him of pains in her toes and the groin, stating that she was not ''sick, except for my legs and feet.'' Appellant examined her, asked her a number of question concerning

her general condition, pregnancy, and mentrual periods. At this time, appellant took her blood pressure, gave her a treatment consisting of "stretching the leg," administered a hypodermic injection of adrenal cortex in the right hip, x-rayed her feet, and prescribed 50,000 units of Vitamin A. When Mrs. Tuttle returned to appellant's office two days later he prescribed for her a proprietary remedy known as calcidin, the essential ingredient of which is iodide, and gave her a diet to improve her "poor muscle tone."

Appellant's witness, Harvey E. Billig, M. D., testified that the Board of Medical Examiners requires chiropodists to take review courses given by licensed medical doctors in order to qualify for renewal of their licenses and that he had been appellant's instructor in such a course. Dr. Billig stated that the proprietary, calcidin, was routine procedure which he had used successfully in the treatment of cold feet (which, incidentally, Mrs. Tuttle denied having complained of), and that he had so instructed the students taking courses from him; that during the course he had made reference to a substance known as adrenal cortex to be used to counteract an imperfect contraction of muscle fibre (a condition known to the laity as poor muscle tone) ; that he believed the use of both calcidin and adrenal cortex to be within the purview of the Chiropodist Act and permissible for use by chiropodists in correcting poor muscle tone in the legs and feet. Mrs. Tuttle, the only witness for the board, testified that there had been some discussion between herself and the doctor with reference to the flabby condition of her neck and arms, her general nervous condition and whether her hair started to turn grey at the temples or had started to turn grey "all over." The testimony is conflicting with respect to whether there had been discussion concerning Mrs. Tuttle's apparent thyroid condition. Appellant testified that Mrs. Tuttle had come to him complaining of pains in her toes and in the groin; that he had been taught to prescribe calcidin as treatment for cold feet; that he had been taught to administer hypodermic injections of adrenal cortex to improve the poor muscle tone of the feet and legs; that he prescribed Vitamin A for treatment of the feet; that he advised a high protein diet in that such a diet had "value in all weaknesses." The testimony of Dr. Billig and appellant's own testimony, which need not be recited further, was sufficient, if accepted as sound professional opinion, to prove that appellant's treat-

ment of Mrs. Tuttle was not in violation of the sections of the Business and Professions Code in question.

Notwithstanding the expert testimony produced by appellant that the treatment administered by him was for the human foot or the muscles or tendons of the leg governing the functions of the foot, there was no testimony to the contrary in the hearing before the board or upon the trial. This was a question in the field of medicine beyond the scope of common knowledge. It called for expert testimony. Fine distinctions might be drawn between treatment of the foot which is permitted chiropodists and treatment for conditions arising elsewhere in the body of which distress in the foot is merely a manifestation. It was improper for the board to decide the questions involved upon the basis of the opinions held by the several members of the board. Neither the board nor the court could render a just decision except in reliance upon expert testimony. The board members apparently relied upon their own opinions as evidence. They were not witnesses and the worth of their opinions could not be tested by cross-examination. They were to decide factual issues and not merely to exercise discretion and judgment. Their decision was subject to review by the courts in which the evidence relied upon to support their determination would be subject to examination. Unstated and unsworn opinions of the board members would not be before the court. They could not be considered for any purpose. In *English* v. *City of Long Beach,* 35 Cal.2d 155, 159 [217 P.2d 22], the court said: "A hearing requires that the party be apprised of the evidence against him so that he may have an opportunity to refute, test and explain it, and the requirement of a hearing necessarily contemplates a decision in light of the evidence there introduced. (*La Prade* v. *Department of Water & Power,* 27 Cal.2d 47, 52 [162 P.2d 13] ; *Universal Cons. Oil Co.* v. *Byram,* 25 Cal.2d 353 [153 P.2d 746].)" Even if the court had not given credence to the opinions of Dr. Billig or appellant there would still have been no evidence whatever in the record that appellant's treatment was not of the foot or the muscles or tendons governing the functions of the foot.

We conclude, therefore, that there was no proof that Dr. Brennan violated section 2139 or section 2378, Business and Professions Code; that the findings and order of the board constituted an abuse of discretion and that the peremptory writ prayed for should have been granted. (*King* v. *Board*

*of Medical Examiners,* 65 Cal.App.2d 644, 652 [151 P.2d 282].)

The judgment is reversed. Judgment should be entered directing that a writ issue commanding the board to annul its order and to take such further action as the board may deem advisable.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied January 4, 1951, and respondents' petition for a hearing by the Supreme Court was denied February 15, 1951. Traynor, J., and Spence, J., voted for a hearing.