EVERETT E. BOLLE, Director of Legislative Services, WisconsinState Assembly
1977 Assembly Resolution No. 13 requests my opinion whether vitamins are drugs within the meaning of sec. 450.06, Stats., and whether vitamins may be sold by stores other than pharmacies.
Section 450.06, Stats., provides in part:
"The term `drug', as used in this chapter, means:
 "(1) Articles recognized in the official U.S. Pharmacopoeia, official Homeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them, intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease in persons or other animals; and
 "(2) All other articles intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease in persons or other animals; and
 "(3) Articles (other than food) intended to affect the structure or any function of the body of persons or other animals; and
 "(4) Articles intended for use as a component of any articles specified in subs. (1), (2) or (3) . . . ."
Section 450.04, Stats., provides in part:
"***
 "(2) No person shall sell . . . drugs . . . unless he be a registered pharmacist . . .
 "(3) This shall not interfere . . . with the sale of proprietary medicines in sealed packages, labeled to comply with the federal *Page 138 
and state pure food and drug law, with directions for using, and the name and location of the manufacturer . . . ."
Proprietary drugs are those which are manufactured on the basis of a secret formula, patented formula, or otherwise protected formula, and which are sold by the manufacturer already packaged and with directions for use under a name chosen by the manufacturer. See 40 OAG 341 (1951).
I am assuming for purposes of this opinion that the vitamins contemplated in the opinion request are recognized in either the official U.S. Pharmacopoeia, the official Homeopathic Pharmacopoeia of the United States, or official National Formulary, and consequently that they are not proprietary drugs. See State v. Wakeen, 263 Wis. 401, 57 N.W.2d 364 (1953), in which the court pointed out that because items are listed in the Pharmacopoeia and the Formulary along with the formula for their manufacture, therefore, the formula being in no sense "secret," the article cannot be a proprietary medicine. See also 14 OAG 18 (1925); 24 OAG 415 (1935). I note that compounds of articles listed in one of the three publications, which are sold under names similar to those articles, for example, "asperline" instead of "aspirin," and for the treatment of similar ailments, have in the past been considered by this office to be drugs and not proprietary medicines. See 28 OAG 90 (1939).
In several opinions issued by former Attorneys General it has been suggested that because an article is listed in one of the three publications mentioned in sec. 450.06 (1), Stats., it is necessarily a drug within the meaning of that statute. See, for example, 16 OAG 780 (1927); 24 OAG 415 (1935). In 37 OAG 410, 412 (1948), however, in what I believe to be a more accurate reading of the statutory language, it was stated that the articles in question were drugs because "they are included in the United States Pharmacopoeia and National Formulary and . . . they are intended for use in the diagnosis, cure, mitigation, treatment or prevention of diseases." (Emphasis added.) In other words, an article is not a drug within the meaning of sec. 450.06 (1), Stats., merely because it is listed in one of the three publications; it must also be "intended for use" for one of the purposes set forth. To hold that the phrase "intended for use" is merely descriptive of all the articles listed in the publications would render one section of the statute without independent purpose. Statutes are to be construed if possible in such a *Page 139 
way that every portion is given separate effect and no word or phrase is mere surplusage. State v. Franklin, 49 Wis.2d 484,182 N.W.2d 289 (1971); State ex rel. Knudsen v. Board of Education,43 Wis.2d 58, 165 N.W.2d 295 (1969). Therefore, the better construction of sec. 450.06 (1), Stats., is that the phrase "intended for use" is not merely descriptive of the articles listed in the three publications, but is instead a standard on the basis of which to differentiate among them.
In the Federal Food, Drug and Cosmetic Act, 21 U.S.C. sec. 301et seq., the definition of "drug" set forth in sec. 321 (a)(2)(g)(1) is substantially the same as that in sec. 450.06, Stats., except that subpart (A) provides, without limitation on the basis of the use to which the articles are put, that the term "drug" includes:
 "(A) articles recognized in the official United States Pharmacopoeia, official Homeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them . . . ."
In National Nutritional Foods Ass'n. v. Food and Drug Admin.,504 F.2d 761, 788-789 (2d Cir. 1974), cert. denied, 420 U.S. 946
(1974), the Court stated that merely because vitamins are listed in the U.S. Pharmacopoeia and the National Formulary they are not necessarily drugs within the meaning of 21 U.S.C. sec. 321. Thereafter in National Nutritional Foods Ass'n. v. Weinberger,512 F.2d 688, 702 (2d Cir. 1975), cert. denied, 423 U.S. 827
(1975), the Court reaffirmed its earlier statement. On remand,418 F. Supp. 394, 398, the district court pointed out that if an article were considered a drug merely because it was listed in the U.S. Pharmacopoeia of the National Formulary, then all
vitamins must be drugs because all are listed in them; yet these publications themselves classify vitamins as either prophylactic (food) or therapeutic (drug) depending upon the dosage per capsule. Therefore the Court held that the better interpretation of the phrase "recognized in the U.S. Pharmacopoeia or National Formulary, as used in 21 U.S.C. sec. 321, is "recognized asdrugs" in them.
In the case of sec. 450.06 (1), Stats., even the recognition of an article as a drug in the U.S. Pharmacopoeia or the National Formulary may not be sufficient reason to consider it a drug within the meaning of the statute. The Federal Food, Drug and Cosmetic Act is largely a labeling act. It is directed in part toward protection of *Page 140 
public health and safety, but it also serves to prevent fraud on consumers by providing the public with accurate information about the content of a wide variety of articles intended for public consumption. Sections 450.04 and 450.06, Stats., in contrast, are police measures designed exclusively to protect the health of the state's citizens through regulation of the sale of drugs which contain potentially harmful ingredients. Being enforced by a penalty provision, see sec. 450.05, Stats., they are to be strictly construed. See 50 OAG 200, 203-204 (1961).
Therefore, before an article should be classified as a drug within the meaning of sec. 450.06 (1), Stats., the determination must be made of whether it is "intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease in persons or other animals." Statements to the contrary in former opinions of the Attorney General are hereby disavowed. In the alternative, granting that vitamins are "intended to affect the structure or any function of the body of persons or other animals," it must also be determined whether they are "food," so as to be outside the scope of sec. 450.06 (3), Stats.
In prior opinions of the Attorney General it has been stated that the addition of a drug in harmless quantities to food does not transform the food itself into a "drug" within the meaning of the predecessor statutes to sec. 450.06, Stats. Thus in 14 OAG 18 (1925), tincture of iodine was found to be a drug within the meaning of then sec. 151.04 (3), Stats., and consequently could be sold only under the supervision of a registered pharmacist. Yet in 14 OAG 131 (1925), it was stated that salt containing a small amount of sodium iodide is a food and not a drug and therefore could be sold as food if properly labeled. The opinion relied in part on the fact that there was an insufficient amount of iodide in the salt to make it poisonous or deleterious to the health of the average person.
In 50 OAG 200 (1961), the question was presented whether oatmeal reducing cookies containing methyl-cellulose are "drugs" merely because they contain one ingredient which is itself a drug, where the only function which the methyl-cellulose performs is to absorb water and expand in the stomach, creating a feeling of *Page 141 
fullness.[1] The answer was held to "depend largely upon the determination of whether substances which are occasionally used in the treatment of illness must then be considered solely as drugs." Ultimately it was found that the cookies are not drugs, in part because:
 "It is difficult to conceive that the legislature intended to treat as a drug every article which a person consumes for the purpose of helping to correct some bodily condition. . . ."
Like methyl-cellulose, vitamins are a component of a wide variety of foods; and like obesity, vitamin deficiency is usually the result of poor eating habits rather than being a "disease" per se. I recognize that in some cases, as of persons suffering from scurvy or rickets, a vitamin deficiency may be so severe as to constitute a disease. I presume that for such persons vitamins of a particular variety and dosage would be prescribed, and that a druggist would be required to compound and sell them. In the ordinary case, however, vitamins are purchased merely as a diet supplement and are not intended to be used for the diagnosis, cure, mitigation, treatment or prevention of disease. Therefore it is my opinion that vitamins are ordinarily food supplements and not drugs, and consequently need not be sold under the supervision of a registered pharmacist.
See also Board of Pharmacy v. Quackenbush Co., 39 A.2d 28,22 N.J. Misc. 334 (1940); Department of State v. Kroeger Grocery Baking Co., 40 N.E.2d 375 (1942), Ind. App., rev'd. on other grounds, 46 N.E.2d 237; King v. Board of Medical Examiners,151 P.2d 282, 286, 65 Cal. App. 2d 644 (1944), in all of which vitamins were found to be diet supplements, therefore food, and not drugs.
Support for this conclusion is found also in NationalNutritional Foods Ass'n. v. Weinberger, supra, which involved a challenge to an FDA regulation classifying vitamins A and D, in tablets or capsules above a specified dosage, as drugs, and below that dosage as food. In enacting the regulation, which the Court upheld, the Commissioner had concluded that vitamins up to a certain dosage are merely food *Page 142 
supplements. They are neither injurious to the health of the average person nor used by him as other than a dietary supplement. Above that dosage, however, the vitamins were found to have no nutritional advantages. On the contrary, at least in the cases of vitamins A and D, they were found to be actively harmful to the health of most individuals, and to serve no function except for those persons suffering from vitamin deficiency to such an extent that it constituted an actual sickness, and who consequently required abnormally high dosages of vitamins which served the function of curing or mitigating the effects of the disease. Recognizing that a uniform agency rule cannot establish a maximum dosage tailored to individual need, the U.S. Government Recommended Daily Allowances for vitamins set forth in 21 C.F.R. sec. 80.1 (f) (1) (1976), were chosen as reasonable outer limits, above which the vitamins ceased to serve a nutritional function and became suitable only for use in the treatment of disease.
In conclusion, this office cannot undertake to establish the dosage limits per capsule at which vitamins cease to be food and become drugs within the meaning of sec. 450.06, Stats. Rather, under the statute as presently written and absent additional legislation, that determination must be made on a case-by-case basis as the issue may arise. Nevertheless, I trust that the discussion above has given you an indication of the considerations which govern in cases where the classification may be open to doubt.
As to your second question, sec. 450.04, Stats., provides that drugs, except for proprietary drugs, may be sold only by a registered pharmacist or a registered assistant pharmacist acting under the supervision of a registered pharmacist. Since it is my conclusion, however, that vitamins are in the ordinary case food and not drugs, sec. 450.04, Stats., does not apply, and they may be sold in stores other than pharmacies.
BCL:WHW
[1] In this opinion methyl-cellulose was found to be a drug within the meaning of then ch. 151, Stats., because it was included in the United States Pharmacopoeia. This statement is obviously inconsistent with my reading of present sec. 450.06
(1), Stats. See above. *Page 143